SHORT MOUNTAIN COAL COMPANY & another *vs.* JAMES C. HARDY & another.

At the trial of an action for the price of coal sold, there being evidence that at several previous sales the defendant had requested the plaintiff to send the weight in long instead of in short tons, and had made no complaint that the coal had not been weighed by a sworn weigher, and had frequently promised to pay the bill in suit, *Held*, that there was evidence proper for the consideration of the jury upon the question whether the parties had, under § 5 of St. 1865, *c.* 191, mutually agreed to waive the provisions of that statute.

In an action to recover back an overpayment made upon a purchase of coal, the issue being whether the coal was delivered and received under a contract between the plaintiff and the defendant, or under one between the plaintiff and the person forwarding the coal, the bill of lading, beginning, "Shipped by" the forwarder "on account of" the defendant, is admissible in evidence.

A declaration of an agent made to a third person is inadmissible in behalf of the principal to prove that the third person was not also his agent, or to support the agent's testimony that such third person was not an agent.

The plaintiff sought to recover of the defendant for an overpayment on account of mer chandise sold to him by the defendant through an agent. The agent testified that his principal in the transaction was not the defendant, but another person. The plaintiff, to contradict the witness, offered the witness's letters written to the plaintiff, in which, professing to act as the defendant's agent, he offered to compromise the claim. *Held,* that the letters were admissible for this purpose.

At the trial of an action to recover for an overpayment for merchandise sold by the defendant to the plaintiff through an agent, the issue being whether the agent had an implied authority to make the sale, the defendant asked his witness whether the agent had authority to sell. *Held,* that the question was inadmissible, because if the inquiry was whether he had an express authority, it was an inquiry concerning an immaterial matter, and if it was whether he had an implied authority, it was an inquiry as to an inference to be drawn by the jury from the facts in the case.

CONTRACT by the Short Mountain Coal Company and the Summit Branch Railroad Company against James C. Hardy and John S. Lamprey, upon an account annexed made up of four charges for Franklin coal sold the defendant, and a charge for interest, the whole amounting to $508.61.

The defendants, among other things, denied that the plaintiffs ever sold them any coal, and asserted that, if they ever did sell them any, "the same was never weighed as by law required," and that it was sold through agents, "and the defendants have paid to said agents sums of money for and on account of coal so sold more than sufficient to pay for all coal so sold." They also filed this declaration in set-off: "And the defendants say that the plaintiffs owe them the sum of $781.70 for money had and received by the plaintiffs to the defendants' use, the same being the amount overdrawn by the plaintiffs on the defendants through their agent in November, 1869, and by the defendants paid."

At the trial in the Superior Court, before *Rockwell,* J., William B. Fowle testified that he was the treasurer and general business agent of the plaintiffs; that their place of business was 32 Summer Street, Boston; that the coal sued for belonged to the plaintiffs; and that it was delivered from the plaintiffs' wharf in Boston.

Charles H. Moseley testified that he was in the employment of the plaintiffs, and weighed the coal for the plaintiffs, and sent the same to the Boston and Maine Railroad for the defendants. It was agreed that, at the time of the sale, Moseley was not a

sworn weigher, and that the coal had not been weighed by a sworn weigher.

Elisha Moseley testified that he was a clerk of the plaintiffs' treasurer, and sold the coal to the defendants, and that he was not an agent for any one but the plaintiffs ; that he had upon several occasions, before the sale of the coal sued for, sold to the defendants other lots of coal, and that Lamprey, one of the defendants, had requested him one or more times to have the weight of coal sent to the Boston and Maine Railroad in long tons, and not in short tons ; that nothing was said in regard to weighing the coal sued for ; that the bill for the coal had been sent to the defendants ; that they had frequently promised to pay it ; and that they never made any complaint that the coal had not been weighed by a sworn weigher.

Lamprey, one of the defendants, testified that he always supposed the coal he bought of the plaintiffs had been weighed by a sworn weigher ; that he never asked for a certificate of weight ; that he never had made any complaint because he had not received such certificate ; that he did not personally know of the answer setting up the defence that the coal had not been weighed as by law required ; that there never was in any way or manner any agreement or understanding at any time to waive the weighing of the coal by a sworn weigher. There was no other evidence tending to prove any agreement between the parties to waive the weighing of the coal by a sworn weigher, duly appointed.

The defendants asked the court to instruct the jury that there was no evidence in the case which would authorize the jury to find that the parties mutually agreed to waive the weighing of the coal according to the provisions of the statute.

The court declined so to instruct the jury, but did instruct them that the plaintiffs could not recover for the coal, as it had not been weighed by a sworn weigher, unless they found that the provisions of the statute in regard to the weighing of the coal had been by mutual agreement waived by the parties previous to the delivery of the coal ; that it was not necessary that such agreement should be proved by any words expressly agreeing to

waive such provisions, but it might be proved by any acts or con-
duct of the parties which satisfied them that the parties mutually
agreed that it should not be weighed by a sworn weigher ; that
the question whether the parties had agreed to waive the weigh-
ing by a sworn weigher was a question of fact for the jury, and
that if the evidence in the case satisfied them of such waiver,
they were authorized so to find upon the evidence.

The defendants offered evidence that the plaintiffs had from
time to time, previously to October, 1869, sold them lots of coal
through their agent, Fowle ; that the plaintiffs had a place of
business in Boston for the selling of coal; that Fowle and Mose-
ley had by letter and verbally solicited the defendants to buy
coal of them ; that they had stated that the plaintiffs were the
only parties who could sell Franklin coal in Boston, and that the
plaintiffs' office was the only place where it could be bought ;
that some time in October, 1869, Moseley requested the defend-
ants to buy a cargo of coal ; that at that time the defendants stated
they had coal enough to last them until the last of February or
the first of March, and that before that time they thought coal
would be cheaper; that thereupon Moseley said if they would
send forward their order then, they should have the benefit of
any fall in the price of coal between the time of ordering and the
time when they should want to use it, and that if coal fell in
price before the end of February, such fall should be allowed to
them ; that under this agreement Moseley filled out an order for
the coal, directed to Sinnickson & Co., which the defendants
signed, supposing Sinnickson & Co. to be the shipping agents of
the plaintiffs. This order had a printed heading specifying the
" Conditions for the sale and shipment of coal," one of which was,
" No contract to be binding unless signed by the purchaser and
accepted in writing by the shipper." This heading was signed
" Sinnickson & Co." The order was as follows :  " On the above
terms and conditions, please deliver on board at your wharves,
Port Richmond, to be shipped to B. and Maine R. R. Boston,
300 Tons, Egg . . . . $8.00 (and allowance should price fall).
Settlement : Draft at 90 days, interest at 7 per cent. added. J. C
Hardy & Co." In the margin was written the word " Accepted,'
without signature.

The defendants further offered evidence that the coal was bought on ninety days' credit from the time of shipment; that it was shipped about November 16, 1869; that in January, 1870, the price of coal fell two dollars per ton; that they were drawn upon, by a ninety days' draft, for the full price of the coal before its delivery; that this draft was drawn by Sinnickson & Co. on the defendants, and by them paid at its maturity, February 16, to a bank which then held it; that when the draft became due they called upon Fowle at the plaintiffs' office for the difference between the amount for which it was given and the amount which it should be with the deduction of the amount of the fall in price; that the claim then set up by Moseley and Fowle was that coal did not fall in price before the close of the season, and that they did not agree to make allowance for fall in price after the close of the season, which they claimed closed the last of December; that about the time of the commencement of the action, Fowle and Moseley for the first time set up the claim that they never sold the coal for which the defendants claimed a deduction in price, but that it was sold by Sinnickson & Co., and that Sinnickson & Co. were the parties upon whom the claim for allowance should be made.

The plaintiffs offered evidence that at the time when the order was given neither Fowle nor Moseley were agents for Sinnickson & Co., except to forward orders on the application of parties; that neither the plaintiffs, Fowle nor Moseley were in any way interested in that order or in the coal delivered by Sinnickson & Co. in pursuance of it, or in the payment made.

One of the defendants testified that, at the time of receiving the coal, they received a bill of lading of the coal, and offered to read it to the jury; but, on objection of the plaintiffs, the court ruled that it was not admissible. The bill of lading commenced, " Shipped by Sinnickson & Co. on account Summit Branch R. R. & Short Mountain Coal Cos., in good order and condition."

The defendants requested the court to instruct the jury that, as the order had not been accepted in writing by Sinnickson & Co. or any agent of the plaintiffs, it was not the contract of the parties. The court declined so to rule. The defendants also

requested the court to rule that if the order was the only evidence of the contract of the parties, the proper construction of the words " allowance should price fall," was that an allowance was to be made should the price fall before the expiration of the time of credit given.   The court declined so to rule.

The plaintiffs offered evidence that both Fowle and Moseley told the defendants at the time of the sale they had nothing to do with selling the coal; and when called upon for the amount of the defendants' claim, they told them that they must look to Sinnickson & Co. for the allowance claimed.

The defendants offered evidence that no such statements were made, and that the only claims made by Fowle and Moseley up to a few days before the action was brought, were that coal did not fall in price before January 1, and that therefore they were not obliged by their contract to make any allowance.   The defendants offered in evidence the following letters :

" Office of J. G. Moody, general selling agent.   Franklin Coal of Lykens Valley, mined by the Summit Branch R. R., Short Mountain, and Lykens Valley Coal Companies, shipped solely by Sinnickson & Co., Phila.   32 Summer Street, Boston, June 2nd, 1870.   Messrs. J. C. Hardy & Co.   Gentlemen : I have consulted with Mr. Fowle about allowing you something on the coal sent you last fall at the high price, and he is adverse to allowing anything, as he says it will only make a precedent which would be dangerous for us in the future ; but as I led you to think you might get some drawback, I shall allow you ($125.00) one hundred and twenty-five dollars in settlement, and hope that will be satisfactory.   Yours truly, Elisha Moseley, Agent.   We continue to keep sold ahead, and if you want more coal by and by you should let us know, that we may have time and not be troubled by the delay that may arise before the order is filled.   E. M."

" Boston, June 22, 1869.   Messrs. J. C. Hardy & Co., Haverhill.   Gentlemen : Our collieries are now at work again and we are filling our back orders at $6.00 per ton, when these are complete we shall begin on new ones at market price when delivered, first orders taking precedence.   We should like to put you down now for your season's supply, and are confident you will get it at

a price much lower than will rule later in the season. Yours truly, Wm. B. Fowle, Treas. Per Elisha Moseley."

" Office of J. G. Moody, general selling agent. Franklin Coal of Lykens Valley, mined by the Summit Branch R. R., Short Mountain, and Lykens Valley Coal Companies, shipped solely by Sinnickson & Co., Phila. 32 Summer Street, Boston, July 15th, 1870. Messrs. J. C. Hardy & Co., Haverhill, Mass. Gen-tlemen : Yours of the 14th is received. We are still selling at ' Market price when shipped ' and delivering at $6.00 on board. We are sold ahead about a month, and could not deliver probably short of that time, so that the freight cannot be estimated. About ' the unsettled matter ' you speak of, I obtained from the Co. a concession of $125.00 on my personal recommendation, and should like a check for coal from Bos. Wharf, which is an entirely sepa-rate matter. I told you that a check for the balance would be satisfactory, but if the allowance must still be ' talked over,' I should be obliged if you would send a check for the bills ren-dered, which the Co. always considered cash. Yours truly, Elisha Moseley, Agent."

The defendants requested the court to instruct the jury that if the plaintiffs, through their agents, in the general scope of their business, represented to the defendants that they were the only parties who could sell the coal, and represented that they were the sellers, and the defendants acted upon these representations, the plaintiffs were estopped from setting up that they acted simply as agents of other parties. And if the plaintiffs through their agents, acting in the general scope of their business, made a contract with the defendants, not disclosing that they were act-ing as agents of other parties, they were bound on their contract so made, even if they were acting as agents of other parties.

The court declined so to instruct the jury, but did instruct them that the question was whether the defendants had made out their claim in set-off. To do that, they must satisfy the jury that the transaction in regard to the cargo of coal, on which they claimed a deduction of two dollars a ton, was not between the defendants and Sinnickson & Co., but that it was between the defendants and the plaintiffs through the plaintiffs' agents ; be-

cause if that contract was between the defendants and Sinnickson & Co. then any claim growing out of it would not be the subject of a claim in set-off in this action ; that the question for the jury was whether, in reference to the sale of this cargo, they were acting as agents for the plaintiffs or not, and that the correspondence of Moseley and Fowle, with the other evidence in the case, · was for their consideration in determining with whom the contract for the cargo of coal was made. ·

The jury found for the plaintiffs for the amount claimed by them, and against the defendants upon their set-off, and the defendants excepted.

*D. Saunders & C. G. Saunders*, for the defendants.

*R. M. Morse, Jr.*, for the plaintiffs.

WELLS, J. From the previous course of business between the parties, and the requests to have coal, sold to these defendants, sent to the railroad "in long tons and not in short tons," we think the question whether the buyer and seller had, before the delivery of the coal sued for, mutually agreed to waive the provisions of the act requiring it to be weighed by a sworn weigher, was properly submitted to the jury as a question of fact. Gen. Sts. c. 49, § 187. St. 1865, c. 191, § 5.

The right of the defendants to avail themselves of a set-off, growing out of a previous transaction, depends upon the question whether, in that previous transaction, their contract was with these plaintiffs, or with Sinnickson & Co.

That the plaintiffs were engaged in selling coal, and had a place of business in Boston, and that Fowle and Moseley were their agents there, were facts not in dispute. From the testimony of the defendants it would have been competent for the jury to have found that an oral agreement had been negotiated with Moseley, for the sale of three hundred tons of coal by the plaintiffs to the defendants ; by the terms of which the price, then fixed, was to be reduced if there should be a fall of price in the market before the end of February. If the coal was delivered and the acceptance given under such an agreement, the defendants, having paid their acceptance for the full price first fixed, would be entitled to maintain, in this mode, their claim for the amount so overpaid.

The plaintiffs contend that the coal was delivered upon the written order signed by the defendants ; and that that writing constituted a contract with Sinnickson & Co., in which all previous oral negotiations were merged. The writing would not of itself have that effect, because, by its terms, it was not to be binding unless " accepted in writing by the shipper," and it does not appear to have been ever so accepted.

But the result would be the same, if the defendants, after signing such an order, received and accepted the coal sent in pursuance thereof, knowing or understanding that in doing so they were dealing with another party than that with which the original oral agreement was made.

It was material therefore for the defendants to show that in the whole transaction they supposed, and might reasonably suppose, that they were dealing exclusively with the plaintiffs. They offered evidence to show that the order was filled out by Moseley for them to sign, " under this agreement " previously made orally between them ; and that they supposed Sinnickson & Co. to be " the shipping agents of the plaintiffs." The order itself is not inconsistent with that relation.

Upon this question, the bill of lading, the regularity and genuineness of which was not questioned, had some bearing. It was received at the time of receiving the coal in execution of the contract. We think it was competent as a part of the whole transaction, and should have been admitted.

If Sinnickson & Co. were the general agents of the plaintiffs for the shipping of their coal from Philadelphia, as indicated by the headings of the letters put in, and of the bill of lading, and the coal was forwarded and the acceptance received by them in that capacity, then the excess of the draft, over and above the price to which the coal should have been reduced in accordance with the agreement upon which the order for its delivery was given, would be money received by these plaintiffs, and a proper subject of reclamation and set-off in this action.

But if Sinnickson & Co. were an independent party, and sent their own coal as a sale from themselves upon an order addressed to them, and drew for the price and received payment of their

drafts in their own right as principals, whatever liabilities these plaintiffs might incur to the defendants upon the original oral agreement, they could not be held to have received the money paid to Sinnickson & Co. upon their draft, and therefore would not be liable for that as a set-off in this action.

The facts do not appear to have been developed in this direction at the trial. The propositions upon which the defendants asked instructions from the court would not have aided them, if instructions had been given as asked. They were not adapted to the real issue, and were therefore properly refused. Even if the plaintiffs were bound upon the original executory contract, — either on the ground that they were estopped by the representations " that they were the only parties who could sell the coal," and " that they were the sellers " in the proposed contract with the defendants ; or on the ground of " not disclosing that they were acting as agents of other parties," — and were liable to the defendants for breach of the contract so made, yet such liability would not avail the defendants in this action. To maintain their set-off, it was necessary, not merely to show that the original contract was such as to be binding between these parties, but also that in its fulfilment the plaintiffs received money from the defendants in excess of the amount to which the contract entitled them ; or that the draft, which the defendants accepted and paid, enured in some form to the use or benefit of the plaintiffs, as the fruit of their contract.

The whole case turned upon the relations of Sinnickson & Co. to the plaintiffs in respect to this transaction. The question was whether they delivered this coal in fulfilment of a contract between these parties, or on their own account. The jury were properly instructed upon this point ; but the defendants were entitled to the advantage to be derived from the bill of lading. The exclusion of that evidence makes a new trial upon the declaration in set-off necessary.                    *Exceptions sustained.*

A new trial was held in the Superior Court, before *Pitman,* J., on the defendants' declaration in set-off only.

The defendants called Lamprey, who testified that he was a member of the defendants' firm; that he had dealt with the Short Mountain Coal Company for a year or two before the transaction in question, and had bought coal of it, both from its wharf, and by the cargo; that his dealings had usually been with Moseley, a clerk in the office; that Moseley had told him that that was the only place where he could get pure Franklin coal; that before the transaction in question, he had had three cargoes of coal; that when he ordered these cargoes he had signed, at Moseley's request, a written order on Sinnickson & Co., of Philadelphia, for the coal, and had subsequently received a bill of lading from Sinnickson & Co., similar to the one received in the present instance, and had accepted and paid a draft for the price of the coal drawn in their own name, by Sinnickson & Co.; that he always supposed Sinnickson & Co. to be merely the shipping agents of the plaintiffs; that the defendants received from Moseley the letter dated June 22, and set forth above; that in the fall of 1869, he was at the plaintiffs' office, and there agreed with Moseley to buy a cargo of 300 tons of Franklin coal, at eight dollars a ton, and to accept a draft for the same on ninety days, with the further agreement that he was to be allowed any fall in price before March 1, 1870; that at Moseley's request he signed the order for the coal mentioned above; that afterwards the defendants received by mail the bill of lading for 325 tons of coal, and were notified at their bank in Haverhill of a draft received for their acceptance for the price of the coal; that they accepted the draft, and paid the same at maturity, which was about the middle of February; that in January, February and March, the price of coal was six dollars per ton; that the day, or day before, the draft matured, he called at the plaintiffs' office and asked Moseley to pay the difference of two dollars per ton, arising out of the fall in price, in all $650; that Moseley said that the treasurer, **Mr.** Fowle, was away, and wished that he, Lamprey, would pay the draft, and see Mr. Fowle when he returned; that in April he bought the coal sued for by the plaintiffs, and in July following had, for the first time, a talk with Mr. Fowle in regard to the matter, in which Fowle declined to make any allowance, saying

that it opened a matter which might bother them in the future, and said he should have no more Franklin coal from their wharf, or by the cargo, unless he paid the bill for the coal already bought from their wharf in Boston; that he would prevent it; that the defendants received from Moseley the letters dated the one, June 2, the other, July 16; that until just before suit was brought, no claim was made that the transaction was with any other party than the plaintiffs.

The plaintiffs called Elisha Moseley, who testified that in 1869 he was clerk in the office of the plaintiffs in Boston, and was not then in the employ of Sinnickson & Co., but was appointed an agent by them, January 1, 1870; that the plaintiffs had a wharf in Boston where they kept coal for sale by wholesale or retail, but they had no coal to sell by the cargo; that the companies had never sold any coal by the cargo; that he had sold coal to Hardy & Co. in 1868; that in the spring or early summer of 1869, Lamprey asked him, as a personal favor, to inform him when it would be advisable to order of Sinnickson & Co., and to order coal for him of them; that in consequence of that, he wrote the letter dated June 22, 1869, and also obtained from Sinnickson & Co. some blank printed orders, and had, prior to the transaction in question, forwarded one or two of them, when filled and signed by Lamprey, to Sinnickson & Co.; that he had told Lamprey that Sinnickson & Co. had an agent in Boston and might object to his interference; that when the order was given, it was agreed that the defendants should have an allowance in case the price fell before the close of the season; that in the coal trade the season is generally understood as ending, at the latest, on the last of December, and as much earlier as navigation is stopped by the ice; that neither Fowle, nor any officer of the corporations, was informed of his transactions with the defendants; that they were not entered on the books of the plaintiffs which he kept; that he forwarded the order to Sinnickson & Co., inclosed in a letter; that he had nothing to do with forwarding the coal, or drawing the draft, or collecting it, and did not know whether the coal was sent or not.

The plaintiffs then read the depositions of William B. Fowle and Thomas J. Yorke, Jr. Fowle testified that in 1869 he was treasurer and manager of the plaintiff corporations; that the companies owned mines in Pennsylvania and mined coal; that they had an oral contract with Sinnickson & Co., under which the latter had the right to buy the product of their mines, not exceeding one half thereof, at a price fixed each month by the companies and varying with the state of the market, less such amounts as Sinnickson & Co. should pay for railroad tolls from the mines to Port Richmond, Philadelphia, where the coal was delivered, and a fixed sum for expenses and charges for shipping and selling; that Sinnickson & Co. settled with the companies on the twelfth of each month, and paid in cash for all coal received by them from the plaintiffs, whether the same had been sold by them or not; that Sinnickson & Co. agreed to sell the coal at the price then fixed as above, without the deductions; that the plaintiffs bought of Sinnickson & Co. such coal as they wished at their wharf in Boston, and paid them for the same at the regular prices thus established; that they sold no coal by the cargo and had no agents for the sale of the same; that Moseley was bookkeeper for the plaintiffs, and his (Fowle's) assistant in all business connected with the corporations; that he gave him (Moseley) instructions to do everything that was necessary to carry on the business of the company in its office work, and its sale of coal from the wharf; that the plaintiffs had no interest in the cargo in question shipped to the defendants, and received no part of the proceeds of the draft for the price of the same.

Yorke testified that he was a member of the firm of Sinnickson & Co.; that their business was that of purchasers, sellers and shippers of coal; that they received the order in a letter from Moseley; that they shipped the coal, sent the bill of lading and drew for the price, and that the proceeds of the draft were paid to and retained by their firm, and that no part of the same was paid to the plaintiffs; that the coal when shipped belonged to them, and the plaintiffs had no interest therein; that they dealt in other coals besides those received from, and bought of the plaintiffs that the words in the heading of the bill of lading, " on account

of Short Mt. Coal Co. and Summit Branch Railroad Co.," &c., were used without reference to their legal bearing, and merely to show customers where the coal came from; that the contract with the plaintiffs was substantially as testified to by Fowle.

The defendants called in rebuttal William Wallace, who testified that he was agent for the plaintiffs for the year 1867; that he then sold for them by the cargo; that he knew Sinnickson & Co., and arranged with them to ship coal for the company, and prepared bills of lading for them similar in form to the bill of lading in this case; that the prices were fixed monthly between Mr. Fowle and himself, and that he ordered Sinnickson & Co. to ship the coal.

They also called Samuel F. Rugg, who testified that he was agent for Sinnickson & Co. and John Romill in 1868 and 1869, and was so advertised over Mr. Fowle's signature; that he always supposed they were agents for the plaintiffs, but was never present when the contracts between them were made; that he received his instructions from Philadelphia, and divided his orders as best he could between Sinnickson & Co. and Romill.

The plaintiffs offered in evidence the letter written by Moseley to Sinnickson & Co., and received by the latter, inclosing the defendants' order for the coal, but the court excluded the same.

Upon cross-examination the defendants asked Moseley, "Did Sinnickson & Co. own the coal in 1871 the same as they did in 1869?" to which the plaintiffs objected, but the court admitted the question.

The letter from Moseley to the defendants, dated June 2, was objected to by the plaintiffs, but the court admitted it, "instructing the jury that any offer of compromise is not binding and is not evidence of liability; but that if in the course of the offer the party makes any admission of matter of fact, that is competent; further, that it did not appear that Moseley had any authority to compromise; that that would be clearly outside his authority, but still that the letter was competent as tending to show that his relation may have been different from what he says, and that the defendants may show as a fact that he attempted to carry on a

negotiation; that Moseley has said that his business was simply to be a sort of channel through which this order was forwarded to Sinnickson & Co., and that it is a question for the jury whether the letter is inconsistent with that; that where a question was made as to a man's interest in the subject matter of the suit, it might be shown that the party took upon himself to negotiate a compromise."

The letter from Moseley to the defendants, dated July 15, was objected to by the plaintiffs and admitted on the same grounds.

The plaintiffs inquired of Fowle as follows: "In the year 1869 had Elisha Moseley any authority to sell cargoes of coal belonging to the corporation?" The court upon the defendants' objection excluded the question.

The plaintiffs at the conclusion of the evidence asked the court to instruct the jury that there was no evidence that the plaintiffs had received any part of the proceeds of the draft drawn for the coal; or that Moseley had authority to make any contract in behalf of the plaintiffs with the defendants for the sale of a cargo of coal; or that Sinnickson & Co. were merely agents for the plaintiffs; or that the plaintiffs had any interest in the coal shipped by Sinnickson & Co. to the defendants; and requested the court to instruct the jury to return a verdict for the plaintiffs on the declaration in set-off.

But the court declined so to rule and submitted all these questions to the jury under instructions substantially in conformity to the language of the court in the opinion heretofore given in this case, to which no exceptions were taken. The jury found for the defendants, and the plaintiffs alleged exceptions, which were argued in March, 1875, by the same counsel.

COLT, J. All the questions in this case arise upon the evidence offered to support or to defeat the defendants' claim in set-off under their count for money had and received. The claim grows out of a previous sale of a cargo of coal to the defendants with an agreement for a stipulated allowance to them on the price paid if within a time named there should be a fall in the market; and the question at the trial was whether this previous sale was made and the price received by the plaintiffs, or by the

firm of Sinnickson & Co., acting on their own account. The defendants claimed that Sinnickson & Co. were the selling and shipping agents of the plaintiffs.

It was not disputed that the plaintiffs had a place of business and a wharf in Boston for the sale of coal at wholesale and retail, but not, as the plaintiffs insisted, by cargo ; that Moseley, a clerk in their office, sent an order for the coal in question to Sinnickson & Co., and agreed to make the allowance claimed by the defendants. The coal was shipped by Sinnickson & Co., who sent the bill of lading to the defendants, and drew on them for the price, and the conditions have happened upon which, according to Moseley's agreement, the allowance was to be made.

The jury, under instructions which are not reported, must have found that Moseley had implied authority, binding upon the plaintiffs, to make an agreement for the allowance claimed upon a sale of coal by the cargo ; that Sinnickson & Co. were the shipping agents of the plaintiffs, with general power to sell by cargo, and that the plaintiffs had received under the agreement with Moseley the amount fixed by the verdict in excess of what they were entitled to in that transaction.

There was evidence that the sale in question was within the scope of the plaintiffs' coal mining operations ; that Moseley was held out by them as having authority to make the agreement, and that the act was ratified by them. There was also evidence, including the admission found in the printed bill of lading and the letters coming from the plaintiffs' office, which justified the jury in finding that Sinnickson & Co. were acting only as agents of the plaintiffs, and were required to sell at a price fixed by the company, but varying with the state of the market ; that they were to receive only a fixed sum for services in selling and for guaranty of sale, while all the rest went into the plaintiffs' hands ; and this is enough to support the count in set-off. We are not required to weigh all the evidence and determine upon which side the preponderance may be ; it is sufficient on these exceptions that there is evidence to warrant the finding.

The rulings upon the evidence offered and admitted require some consideration.

1. No exception can be sustained to the exclusion of the letter of Moseley to Sinnickson & Co. inclosing the defendant's order for coal. Upon the issue raised, the declarations of an agent of the plaintiffs to another person are not admissible in favor of the plaintiffs to show whether that person was or was not an agent of theirs, or to support the agent's testimony.

2. The question whether Sinnickson & Co. owned the coal in 1871, the same as they did in 1869, does not appear to have been an improper question to Moseley on cross-examination, and as the answer is not stated in the bill of exceptions it does not appear that the plaintiff was prejudiced by the question.

3. The letters from Moseley to the defendant were admissible as having a tendency to contradict his testimony, denying a sale and agreement by the plaintiffs through his agency. The jury were sufficiently cautioned as to their use for other purposes, but were permitted to use them as showing that he had more interest in the transaction than he had admitted.

4. The plaintiffs called one Fowle, who testified that he was treasurer and manager of the plaintiff corporations in 1869; that these companies sold no coal by the cargo, and had no agent for the sale of the same; that Moseley was book-keeper for the plaintiffs, and his (Fowle's) assistant, and had instructions to do everything that was necessary to carry on the business in its office work and its sale of coal on the wharf. He was asked by the plaintiffs, if Moseley, in that year, had any authority to sell cargoes of coal belonging to the corporation, but on the defendant's objection was not permitted to answer. As the case stood, an answer in favor of the plaintiff would not have been material. If it was intended to ask whether any express authority had been given to Moseley to sell by the cargo, it was immaterial, as the defendant was not seeking to charge the plaintiffs on the ground that Moseley was actually authorized to contract, but upon the ground that he had been held out as their agent. If it was intended to ask whether by the acts or conduct of the plaintiffs he had been authorized or held out as authorized so to sell coal, it was an inquiry as to the inference to be drawn from the facts in the case, which was a question wholly for the jury. In neither aspect were the plaintiffs entitled to ask the question. *Exceptions overruled.*