INSTITUTION FOR SAVINGS IN NEWBURYPORT AND ITS VICINITY *vs.* INHABITANTS OF BROOKLINE.

Norfolk. January 14, 1915. — February 26, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Damages,* For property taken or impaired under statutory authority. *Way,* Public, Private. *Easement. Evidence,* Of extent of easement, Of agency. *Agency,* Existence of relation. *Savings Bank. Corporation,* Officers and agents. *Practice, Civil,* Judge's charge.

At the trial of a petition against the town of Brookline for the assessment of damages due to the taking of one half of a path, which provided a convenient

means of communication between a much used street and a populous residential section on a hill, where it appears that one, who had been the owner of the path and of the land from which a large part of the residential section was developed, had made the path subject to an easement of use "for all the purposes for which such passageways now are or at any time hereafter may be commonly used in said town of Brookline," evidence is admissible, for the purpose of proving that no greater servitude existed after than before the taking, of the physical uses made of similar paths in Brookline as a means of access to the lots adjoining and of passing from one street to another and for the construction of drains and sewers and for the installation of gas, electricity and water, irrespective of the provisions of the deeds, instruments or public acts which created them.

At the trial of a petition by a banking corporation against a town for the assessment of damages due to the taking of one half of a path for a public footpath, the judge, subject to an exception by the petitioner, admitted in evidence a letter, written to the chairman of the selectmen of the town before the taking with regard to the town assuming care of the path by one, who enclosed with the letter a copy of a letter to the banking corporation from an owner of land adjoining the way demanding that the path be taken care of. The writer of the letter testified that he did not know how he came by the enclosed copy, that he "tried to sell and looked after the house on the petitioner's lot," and "that he had general charge" of it to that extent. The letter stated that the petitioner would be willing at any time to execute any conveyance or release which might be required if it should be found necessary or desirable to transfer any fee in the way to the town. There was evidence that the letter was written after a consultation between the writer and the president of the bank. *Held,* that the letter was inadmissible for any purpose, because the authority of its writer to bind the bank could not be shown from his statements, and there was no evidence that the president of the bank had any authority to delegate power to him.

The error committed by the admission of such letter was not cured by an instruction to the jury not to consider the letter unless they were satisfied of the authority of the writer to bind the bank; because on the evidence the jury would not have been warranted in any event in finding the existence of such authority.

The president of a savings bank has no authority merely by virtue of his office to delegate power to another to write a letter to a town containing offers or admissions as to the value of the bank's interest in a certain path in a town.

The owner of the fee in one half of a passageway in the town of Brookline, which provides a convenient means of communication between a much used street and a populous residential district on a hill and which is subject to an easement of use "for all the purposes for which such passageways now are or any time hereafter may be commonly used in said town of Brookline," has no right to build a structure over his half of the way nor to construct buildings which will drop snow, ice or water from their roofs upon it.

PETITION, filed in the Superior Court on September 23, 1904, for damages caused to the petitioner by the laying out of Summit Path in Brookline as a public footpath.

The case was tried before *Fox*, J.  It appeared that the petitioner owned one half of the path, divided longitudinally, that it ran from Beacon Street to Lancaster Terrace, was somewhat steep, was constructed of stone and plank steps and walks and was bordered by bushes and shrubs.  The path was built by the petitioner's predecessor in title, Eben D. Jordan, as a part of a scheme for the development of property owned by him on the hill, and in all deeds by him of land in the vicinity the path was made subject to an easement or right of use "for all the purposes for which such passageways now are or at any time hereafter may be commonly used in said town of Brookline."

At the trial, Alexis H. French, the town engineer of Brookline, was asked how many passageways there were in Brookline similar to Summit Path physically at the time "in 1894 or thereabouts" when it was laid out.  Subject to an exception by the petitioner, the witness answered that there were ten or twelve.  Subject to further exceptions by the petitioner, who contended that the provisions of the deeds, instruments or public acts, which created such paths, first should be shown in order to ascertain whether the easements as to their use were similar to those of Summit Path, the witness, in reply to a question as to the use made of those passageways that had been accepted by the town, made the following statement:

"Of course they are used as means of access more frequently than anywhere else to get to lots that were high up on the side hills, where the roads were circuitous and long, while a shortcut on the slope, with flights of steps, would make it possible to get to the high land that would involve a quarter of a mile of travel by highway; . . . they are used some for sewers and drains: as access, to the back entrance to the houses fronting on the streets and whose backways were connected, — whose rears to whose lots were reached by, — over these passageways, so that the butchers and milkmen and provision dealers and all those people seeking to reach the back entrances would use the public path rather than to maintain a private path.  Such paths are also used for water, gas and electric conduits, also poles and wires to a certain extent, and that there was a sewer or drain in part of this path at the time the town accepted it, a surface drain and not a sewer; this was constructed in that portion of

the path from Beacon Street to a point where the path changes direction."

Subject to exceptions by the petitioner, one William H. White testified, as to uses made of similar paths in Brookline, "First as a passageway, access from one street to another, from one property to another; drainage and maintaining of poles and wires for lights. . . . Some of these paths had poles and wires, some not."

One John D. Hardy testified that he "tried to sell and looked after the house on the petitioner's lot of land; . . . that he had general charge of this property to the extent above stated; that the petitioner asked him to take charge of this property and placed it in his hands to a certain extent;" that he had received a certain letter addressed to the petitioner from Edward E. Blodgett, Esquire, who owned property at the corner of Summit Terrace and Summit Path, calling the petitioner's attention to the bad condition of the path as to snow and ice, stating that in case of accidents the owners of the path would "be held responsible for injuries resulting therefrom" and suggesting that it was possible, if the petitioner desired, "to deed the passageway to the town that the town would accept the same and lay it out as a public way and then that the town would assume control of it." Hardy testified that this letter "must have come to him from the petitioner; that he could not recall how that letter came to him; . . . that afterwards he took pains to look through every record he had or could find, and could not find anything which would show where this letter came from or how it came to him."

Subject to an exception by the petitioner, the following letter from Hardy to the chairman of the board of selectmen of Brookline, in which was enclosed a copy of the letter from Mr. Blodgett to the petitioner, was admitted in evidence, "not as evidence of a waiver by the bank of damages."

"Dear Sir:—The Institution for Savings in Newburyport and its Vicinity sent me a letter written them by Edw. E. Blodgett of which a copy is enclosed. Will it not be possible for the town to care for this passageway? If the facts as to ownership and what the owner is required to do are as stated by Mr. Blodgett, I have no knowledge of them, as the passageway is wholly outside the so called Jordan Estate and is used by persons passing between

Beacon Street and the street above it, the same as other public passageways, in the town are used, it seems to me that it may be proper for the town to assume its care. We shall wish to do not only what we are compelled to do but what it is proper for us to do in the matter and therefore will thank you if you will be good enough to advise me on the above suggestion. The Bank will, of course, be quite willing at any time, now or later, to execute any conveyance or release which may be required if it shall be found necessary or desirable to transfer any fee in the Way to the Town."

Other material evidence is described in the opinion.

At the close of the evidence, the petitioner asked for the following rulings among others:

"5. In estimating the damages, the jury may also consider that prior to said taking the petitioner had a right to build over the way in such a manner as would not obstruct the passing of persons having the right to pass to and fro over said way, and that the petitioner by the laying out has been deprived of any advantage by reason of the right so to build over the way."

"7. In estimating the damages, the jury may further consider as a matter of law that the petitioner by the laying out of the way has been deprived of the right to prevent poles and wires for the purpose of transmitting electricity for light, heat, and power, for telephone and telegraph poles, from being set in the way, has been deprived of the right to erect a barbed wire fence along its length, has been deprived of the right of having buildings erected upon its remaining land, drop snow, ice or water from the roofs thereof upon the way."

The judge charged the jury with regard to the several requests, in substance as follows:

"All agree, gentlemen, and I instruct you, that the town, as the owner of this public way, has the right, if it desires, to establish upon it any telegraph poles and electric light poles. That is considered a proper public use for a way. The request, however, implies that the abutting owner had the right to prevent the erection of poles before this way was taken by the public. Well, nobody could put any poles or wires, certainly, into that way before this town took it except those who had an easement; that is, Mr. Blodgett and his neighbors on the hill, who had ob-

tained this easement.  There was something in the evidence to indicate that some passageways had been used for light and for telegraph poles, although I cannot undertake to say to you on the evidence whether Mr. Blodgett and the rest would have a right to run a line of poles down there or not. . . . I certainly should not say to you that before this way was taken by the town, Mr. Jordan would have had a right to put a building upon the line of this passageway and to have that so that that building would drop snow and ice upon this way, because, as I have already said, having granted this right of passageway he would have no right to obstruct it.  If he put up a building in such a way that it dropped snow and ice into the passageway, or obstructed it in that way or made it dangerous, he might be responsible for that."

With regard to the letter written by Mr. Blodgett to the Institution for Savings and the letter written by Hardy to the chairman of the selectmen, the judge charged the jury as follows:

"I have been asked to rule and do rule that they are not to be treated as estopping the Newburyport Savings Bank from making a claim for damages.  They are admissible, if at all, only as evidence as an admission against the Institution on the question of what value, Hardy, as the agent for the Savings Bank, put upon this half of the passageway at that time.  And they are not to be used or considered by you at all unless you find upon all the evidence that Hardy, as the agent, had authority from the Bank to write this letter to the town."

The jury found for the petitioner in the sum of $1.  The petitioner alleged exceptions.

*N. N. Jones,* for the petitioner.

*W. D. Turner,* (*G. Hoague* with him,) for the respondent.

BRALEY, J.  The petitioner at the date of the taking owned in fee one half of the footway, the whole of which was subject to an easement of passage for the benefit of the owners of abutting estates and of other estates in the vicinity of its northerly entrance for all purposes for which such passageways "now are or at any time hereafter may be commonly used" in the defendant town.  It undoubtedly was impossible to exclude the general public, as the way provided a convenient means of communication between a much used street at the southerly entrance and a

populous residential section.  By the terms of the grant the user is not restricted in terms to the owners of the dominant estates, their servants and agents, and the jury could find that the way was open for all purposes for which such passageways commonly were used.

The petitioner's damages being limited to the real value of the land taken and the injury to its remaining land, the evidence introduced by the respondent as to the physical use of other similar ways was admitted properly.  It tended to show that no greater servitude existed after than before the taking, and within reasonable limits, which do not appear to have been exceeded, the witnesses could describe the conditions of travel over such ways. And, if it appeared that the petitioner's property had been benefited, the benefits could be set off against the damages. R. L. c. 48, § 84.  R. L. c. 48, §§ 65–85.  *Chase* v. *Worcester*, 108 Mass. 60, 66.  *Beale* v. *Boston*, 166 Mass. 53, 55.  *Allen* v. *Boston*, 159 Mass. 324.  *Cole* v. *Boston*, 181 Mass. 374.  *Ham* v. *Salem*, 100 Mass. 350.

The respondent also could prove by competent evidence, that the petitioner had offered to waive compensation and transfer the fee if the town would make the path a public way.  *Brown* v. *Worcester*, 13 Gray, 31, 36.  But the letter of Hardy containing this offer was admitted improperly.  If the jury on his evidence could find, that it had been written after, and not before consultation with the petitioner's president, and the petitioner had received the letter of Blodgett, in which the proposal that the bank should make such conveyance appears, and transmitted it to Hardy, there is no evidence that the president had been authorized to make the proposition or complete the transfer.  The declarations of an agent and his acts are not of themselves evidence of his authority binding his alleged principal.  *Brown* v. *Leach*, 107 Mass. 364.  *Short Mountain Coal Co.* v. *Hardy*, 114 Mass. 197, 213.  *Fletcher* v. *Willis*, 180 Mass. 243.  See *Williams* v. *Dugan*, 217 Mass. 526.  To make the evidence admissible it was necessary for the respondent to introduce some evidence that the president had been authorized by either a by-law of the bank or vote of the trustees to consent to the taking and to waive all claim for damages.  It cannot be inferred that he possessed such powers solely by virtue of his office.  R. L. c. 113, §§ 14–20.

St. 1902, c. 169, § 1.  *Greenfield Savings Bank* v. *Abercrombie,* 211 Mass. 252, 255, 256.  *Gerrity* v. *Wareham Savings Bank,* 202 Mass. 214, 219.  *New England Mutual Life Ins. Co.* v. *Wing,* 191 Mass. 192.  Nor did it follow from what the president is purported to have said, that he authorized or delegated Hardy to make the offer in the bank's behalf.  *Spaulding* v. *Jennings,* 173 Mass. 65, 67.  *Chaffee* v. *Blaisdell,* 142 Mass. 538.  The instruction, that the jury were not to consider the letter with the enclosure unless satisfied that Hardy had authority to act as the petitioner's agent, did not cure this error.  It necessarily assumed that the evidence might be found as matter of law sufficient to prove agency.

The petitioner having excepted seasonably to the admission of the letters and to the instruction, this exception must be sustained.

The other exceptions, which in so far as argued relate to the failure to give the fifth and seventh requests as framed, are not meritorious.  The petitioner by the wording of the grant or grants creating the easement could not obstruct or arch over its half of the way.  If it had this right the other abutters also possessed it, and the way could be encroached upon indefinitely until nothing but a narrow dark and dangerous path would remain.  It is also plain from all the evidence, that the right of passage included the entire width open to the sky except possibly as narrowed by the shrubbery planted and maintained apparently by common consent along part of the borders.  *Lipsky* v. *Heller,* 199 Mass. 310, 318. If before the laying out by the respondent other paths had been used for the location of telegraph, telephone and electric light poles, and the jury could find that the petitioner had been deprived of a similar use, the judge was not required to rule in the language requested, and the instructions amply protected its rights.  *Graham* v. *Middleby,* 185 Mass. 349.

*Exceptions sustained.*