## ANTHONY CHASE *vs.* CITY OF WORCESTER.

County commissioners have no authority to institute proceedings under the betterment acts of 1866, *c.* 174, and 1868, *c.* 75, for the laying out or alteration of streets in any city, to be conducted under those acts either by themselves or by the city council or other board of the city in compliance with their order.

In estimating under the Gen. Sts. *c.* 43, § 16, the benefit resulting to an estate on the corner of two streets from an alteration of one of them occasioned by an alteration of the other, a previous written agreement of its owner to release all damages if similar alterations should be made, though not admissible in evidence as a release, because the alterations were not actually made in accordance with it, yet is admissible to show that at its date he considered that his estate would derive some benefit from such alterations.

The damages of an abutter, from widening a street and changing its grade, are, besides the value of his land taken for the widening, the amount of the depreciation of his remaining estate, considering all the circumstances of the condition in which it is left by the alteration of the street, and its capabilities either for sale or valuable use, or for improvement in such manner as he may choose; but, in assessing them, evidence is inadmissible of the expenses of particular improvements which he may see fit to adopt in consequence of the alteration of the street, such as moving a dwelling-house, already standing more than fifty feet from the line of the street, still further back from it.

PETITION to the county commissioners, in March 1870, for the assessment by a jury of the damages of an abutter on Corbett Street, a public way in the city of Worcester, by reason of the widening and alteration of the street under an order passed by them June 23, 1869, upon the petition of John J. Power and others.

The sheriff's certificate of the proceedings at the trial set forth that "in said trial, notwithstanding the objections of the counsel for the respondents, I directed the jury that the statute known as the betterment act (which had been accepted by the city council of Worcester) limited their inquiries and determination to the question of the amount of land taken for said way, its value, and the damage done thereby to said complainant's estate, and that the benefits, if there were any, to said estate, from the location and construction of the said way, might be liable to be determined in another form and by another body."

The sheriff also certified to the superior court, with the verdict of the jury, a bill of exceptions alleged by the respondents to his rulings at the trial; and the following is the substance of the material parts thereof:

It appeared at the trial " that Main Street was a county road running north and south through the city of Worcester, and Corbett Street was a city street or town way 37 feet wide, which entered Main Street at right angles and extended westerly to High Street; that at the point where Corbett Street entered Main Street the grade of a portion of the west side of Main Street was twelve feet above the grade of the travelled part of the street ; and that a driveway, partly within the limits of the street and partly upon lands of the abutters, extended in a north and south direction from Corbett Street, on a descending grade each way, until the level of the travelled part of Main Street was reached. The portion of Main Street above referred to was between Pleasant Street and Austin Street, both which streets extended westerly from Main Street. The complainant was the owner of an estate abutting 164 feet on the westerly side of Main Street and 182 feet on the northerly side of Corbett Street, a portion of which was taken for widening Corbett Street, and the surface of the lot corresponded with the grade of the elevated portion of Main Street and of Corbett Street."

It also appeared that in October 1867 William W. Rice and others petitioned the city council " to establish the grade of that portion of Main Street lying between Pleasant Street and Austin Street ; " that in April 1868 a joint committee of that body reported thereon a recommendation " that the elevated portion of Main Street above referred to should be cut down to correspond with the grade of the rest of the street, and Corbett Street should be regraded, commencing at a point opposite the west line of the complainant's estate, at the surface of the street, and terminating at the new grade on Main Street;" that on December 30, 1868, the county commissioners, upon petition of the mayor and aldermen, passed an order widening Main Street between Pleasant and Austin Streets, and reducing the grade of its elevated portion to the level of the rest of the street; that a strip of the complainant's land on Main Street, varying in width from 11 feet to $5\frac{4}{10}$ feet was thereby taken ; and that no claim for damages was made by any of the persons interested in these changes.

It further appeared that on March 30, 1868, Calvin Taft and others presented a petition to the mayor and aldermen, whic' first referred to the previous petition of William W. Rice and others, and then set forth that, whereas it seemed that said changes in Main Street would render necessary certain changes in Corbett Street, therefore the petitioners "ask that you will straighten, alter, widen and grade Corbett Street from its eastern to its western terminus as to you shall seem best ; " that several hearings were had by the mayor and aldermen on this petition, but no action was taken by them thereon ; that on August 23, 1868, upon a petition of Edwin Morse and others, presented May 25, 1868, the mayor and aldermen passed an order for increasing the width of Corbett Street to 40 feet by taking a strip of land three feet wide from the estate of the complainant, and for adapting the grade of the street to the change in the grade of Main Street, but the common council refused to concur in this order ; that afterwards, upon the petition of John J. Power and others, the county commissioners passed their order of June 23, 1869, increasing the width of Corbett Street to 45 feet by taking a strip of land eight feet wide from the estate of the complainant abutting on that street, changing the grade of Corbett Street by lowering it gradually from High Street to the level of the changed grade of the formerly elevated portion of Main Street at its junction therewith, and directing the city of Worcester to construct and complete Corbett Street, in pursuance of this order, on or before January 1, 1870 ; and that the city complied with the direction.

The respondents offered in evidence the following instrument, signed and sealed under date of April 27, 1868, by the complainant and Elizabeth C. Rice, who was the owner of the estate on the south side of Corbett Street, opposite the estate of the complainant :

"We, the undersigned, owners of real estate on Main and Corbett Streets in the city of Worcester, hereby covenant and agree that we will make no claim for damages to our respective estates on said streets, against either the city of Worcester or the county of Worcester, occasioned by the grading, altering, widen-

ing or otherwise changing of Main Street, between Pleasant and Austin Streets, in accordance with a plan prepared by the city engineer and now before the city government of Worcester, on petition of William W. Rice and others and Calvin Taft and others; and we further covenant and agree that we will make no claim for damages to said estates on account of any grading which shall be done to Corbett Street in order to make said Corbett Street correspond with Main Street after the alterations aforesaid, and rendered necessary or desirable thereby. This agreement extends to any damage which may be occasioned by the action of the board of county commissioners, as well as by the city government of Worcester, so long as the changes made are substantially in accordance with the plan aforesaid." This instrument was excluded, on the objection of the complainant; and he was permitted to testify, against the respondents' objection, "that, when he signed the release, the city authorities orally proposed to him to grade Corbett Street, commencing at the surface at his west line, and terminating at the lower grade of Main Street, and within the old limits of Corbett Street, and that he then had no knowledge of any other plan for the alteration or grading of Corbett Street."

It further appeared that "the complainant's dwelling-house, which stood upon his lot, was $52\frac{1}{2}$ feet from Corbett Street and $39\frac{7}{10}$ feet from Main Street;" and, against the objection of the respondents, the complainant was permitted to testify "that he made a contract with Hezekiah Babcock, whose business was to move buildings, to move the dwelling-house from its former site to the rear of the lot, and Babcock moved back the house, and the complainant paid him therefor $1400;" and to introduce evidence ".that this removal was rendered necessary by the change of grade in Corbett Street," and also "that he had expended $700 in putting in the foundations of the house on the new site, that it would require the removal of 5590 cubic yards of earth to lower the grade of the lot to correspond with the new grade of Corbett Street, that only a part of this excavation had been done, and it had and would cost at the rate of 45 cents a cubic yard to remove the earth, and that it would cost $800 to

construct a bank wall on his west line, when the grade of the lot was lowered, the lowering of the grade rendering the wall necessary."

It also appeared that the city council, on March 30, 1868, duly accepted the St. of 1868, *c.* 75, and on April 25, 1870, the St. of 1870, *c.* 163. The respondents offered to prove " that the portion of the complainant's estate which was not taken for widening Corbett Street had derived certain peculiar and direct benefits from the widening and grading of said street, which were not received in common with other owners of real estate in that vicinity ; that by said changes it was rendered more accessible, and could be more advantageously used for business purposes ; and that said estate was thereby greatly increased in value," and they requested the sheriff to instruct the jury " that, in estimating the damages to that portion of the complainant's estate not taken, such benefits should be deducted, as well as from the value of the land taken." But the sheriff refused to permit the respondents to introduce evidence to prove such benefits, and to rule as requested, and instructed the jury " that they should make no deductions, on account of any benefits, from the damages sustained by the complainant."

In the superior court, the complainant moved for the acceptance of the verdict ; the respondents opposed the motion ; and *Dewey*, J., by consent of the parties, reported to this court the questions of law arising upon the sheriff's certificate, — the verdict to be set aside, or judgment to be entered thereon, according to their determination.

*P. E. Aldrich*, for the complainant.

*T. L. Nelson*, for the respondents.

WELLS, J. The trial of this case appears to have been conducted upon the supposition that the county commissioners, in widening Corbett Street and ordering the change of grade, were acting under the authority of the several statutes known as betterment acts. But, in our opinion, those statutes have no application to proceedings before county commissioners, whether those proceedings relate to highways or to streets in cities that are not county roads.

The act of 1866, c. 174, gave to the board of aldermen of the city of Boston power to lay out, alter and change the grade of streets, and assess a portion of the expense upon abutters. But this power was one which they might exercise or not in their discretion. It was not exclusive of the power which had previously been vested in that board to lay out and alter streets under the general provisions of law. By § 10 it is expressly so provided and declared.

The special authority conferred by this statute was extended in 1868, by chapter 75 of the acts of that year, to all the cities of the Commonwealth; "provided, that in any city where the power to lay out and alter the streets in such city is vested in any other board or persons than the board of aldermen, such board or persons shall have the same power and authority as the board of aldermen of the city of Boston." In the city of Worcester, that power was vested in the city council. The city council therefore is the board thus designated to exercise the special powers defined in the act of 1866, c. 174; and they are special powers, confided to the city council as exclusively as if they had been given to the city council *eo nomine* by the terms of the act by which they are conferred. The phraseology of the proviso was doubtless intended to obviate any difficulty which might arise from a want of uniformity in the organization of city governments, or in the designation of the board to which the power to lay out and alter streets within the city may have been confided. County commissioners are clearly not clothed with any concurrent authority by virtue of the designation contained in this proviso. It looks to proceedings which are confined to the city limits, and to a local board within the city, corresponding to the board of aldermen in Boston. If it had been intended that county commissioners should exercise any of the powers under these acts, the authority would have been conferred upon them by their well known and long established official designation.

Under the general provisions of law relating to ways in towns, county commissioners have power to lay out and alter such ways, if the selectmen " unreasonably refuse or neglect " to do it. Gen.

Sts. *c.* 43, § 67. Like authority is reserved to the county commissioners in the act establishing the city of Worcester. St. 1848, *c.* 32, § 12. But no such authority is given to them under the betterment acts. None can be derived from the act of 1866, *c.* 174, because the board of aldermen of the city of Boston had the supreme authority. In extending that act to all the cities, no such appellate authority is provided for. Proceedings under the powers thus given do not take the place of those which are authorized by previously existing laws ; because, as already suggested, all those provisions are expressly retained in force. We find no indication that proceedings in cities, under these special powers, were intended to be subject to the appellate control by county commissioners, in the manner provided for such control in regard to ways laid out or altered in the ordinary mode.

We are of opinion therefore that county commissioners have no authority under the betterment acts to institute proceedings in any city, to be conducted under those acts either by themselves or by the city council or other board of a city in compliance with their order.

In widening Corbett Street, and ordering the change of grade, the county commissioners must be held to have acted under their general authority as conferred by the Gen. Sts. *c.* 43, § 67, and St. 1848, *c.* 32, § 12. It follows, that the provisions of law as contained in the General Statutes are applicable to these proceedings ; and the mode of estimating the damages as prescribed in *c.* 43, § 16, should have been adopted. This requires that " the benefit, if any, to the property of the party by reason thereof," shall be allowed, " by way of set-off " to the damages caused by the location and construction of the new or altered way. As this was not allowed, and the evidence offered to prove it was rejected, the verdict must be set aside.

As some of the questions of evidence may be expected to arise in the same or similar form, upon another trial, we deem it proper to proceed to consider them now.

1. The release of damages was not competent, as a release because the alterations were not made in accordance with it. But we think that this, as well as the previous release of dam

Chase *v.* Worcester.

ages on Main Street, with which Corbett Street connected, was admissible as an admission by the petitioner, tending to show that at that time he considered that his estate would derive some benefit from improvements similar to those which were afterwards made. If the variation from those contemplated by the release was such as to destroy the force of the supposed admission, it was open to explanation by him so as to make that appear. . But the jury were the proper judges of the pertinence and weight of the evidence.

2. The damages to the petitioner are not properly to be measured by the cost of such improvements or changes as he may think desirable to make to adapt his estate to the new condition of the streets. Expenditures, necessary to restore structures upon the premises to their former condition relatively, may be recoverable as a part of the incidental damages. But improvements, substantial changes, such as appear to have been made by this petitioner, are not of that character. The dwelling-house which he removed was fifty-two and one half feet from Corbett Street. However advantageous its removal might be, it was not rendered necessary by the alteration and grading of Corbett Street.

Aside from the value of the land taken, the damages to the petitioner were the amount of depreciation in value of the remaining land, taking into consideration all the circumstances of the condition in which it was left by the changes made in the street, and its capabilities either for sale or valuable use in that condition, or for improvement in such mode as the owner might choose.

The expenses of particular improvements, which the petitioner subsequently saw fit to adopt, were not properly to be taken as a part of his damages; and the evidence of the amounts so expended or required was improperly admitted.

The other points are not so presented as to require any decision at this time.                    *Verdict set aside.*