(Hamilton Co. O., Common Pleas, 1882.)
THE CITY OF CINCINNATI v. F. B. WIL-
LIAMS and JOHN & E. T. SWIFT.

*Municipal Corporations—Liability for in-
juries by change of grade of street—*

1. A municipal corporation while acting
within the scope of its legal authority and with
care, is *not liable* for injuries to the owner of
abutting property, occasioned by digging down
or filling up a street to make it conform to an
established grade. To this general rule there
are the following exceptions:

a. It is liable to the owner of an unim-
proved lot, if the grade established is an un-
reasonable or improper one.

b. It is liable to the owner of an improved
lot, if the owner has made his improvements
with reference to the regularly established
grade of street, and the corporation changes
such grade to his injury.

c. It is liable to the owner of an improved
lot, if he has made his improvements with
reference to the level or grade of a public
way, fixed by the direction or under the sanc-
tion of the proper authorities, so as to fairly
indicate permanency, if such grade or level
be afterward changed to his injury.

d. It is liable to the owner of an improved
lot, if he has made his improvements with
reference to a reasonable future grade before
any grade has been established, first, if the
corporation establish the grade which the own-
er anticipated and afterward change it to his
injury, or second, if the corporation establish
in the first instance an unreasonable grade.

*Measure of Damages—*

2. Damages are limited to injury to improve-
ments whether they are houses, fences or
hedges. If wholly destroyed their value is
the measure, and if only injured, the difference
in value. If new approaches to the house can
be made their cost plus the difference in value
is the damages. The sightliness of the place
and the obstruction of view is not property.
General benefits common to the neighborhood
are not set off; *contra* of the local increase of
value, as by change of slopes. Injury to the
drainage of the building but not of the lot is
to be allowed for.

3. Country owners have the same rights in
turnpike grades permanently adopted by im-
provement and usage as owners on a city
street, and after annexation to a city, may re-
cover damages for injury by a change of grade.

[The charge to the jury in this case by
Judge Avery, who for almost twenty years
was a judge of the court of common pleas in
Hamilton county and who was recognized as
one of the ablest members of the judiciary of
Ohio of that time, is found in an editorial
article by Hon. F. M. Coppock, of the Cincin-
nati Bar, at the time city solicitor of the city
of Cincinnati, published in the 10th American
Law Record.
The charge is a very able and full statement
of the law on the question of the liability

of municipal corporations for damages caused
to abutting property by change of grade of
street, and we republish it here because it is
frequently used and referred to in the courts
of Ohio.]

On March 4, 1882, The city of Cincinnati
filed its petition, setting forth the proceedings
of the board of public works and of the com-
mon council, which are required by the law
of Ohio for the improvement of a street, and
showing the necessary preliminary steps for
the improvement of the Madisonville Turn-
pike, from McMillan street to Woodburn ave-
nue, and further showing that the defendants
had filed their claims for damages with the
city clerk, as required by law, and stating
that the ordinance for said improvement pro-
vided that the claims for damages should be
judicially inquired into before the proposed
improvement should be made and prayed the
court to call a jury for the assessment of the
damages claimed.

It appeared that the plans and specifications
for the improvement contemplated a cut in
front of the premises of F. B. Williams,
varying in depth from grade to between eleven
and twelve feet; and a fill varying in height
from two to some seven feet in front of the
premises of Mrs. E. T. Swift. It further
appeared that the premises of each of the de-
fendants had been improved with dwelling
houses and appurtenances in the year 1859,
with reference to the grade and level of the
Madisonville Turnpike, a public road owned
by a private corporation. That the premises
of the defendants were not at the time with-
in the corporate limits, but first became part
of the corporation of Woodburn, which cor-
poration subsequently became part of the cor-
poration of Cincinnati. It also appeared that
the city of Cincinnati had acquired the rights
of the turnpike company in said road, so far
as the corporation of Cincinnati extended.

The case was submitted to the jury under
the following charge of the court:

AVERY, J.

"Gentlemen of the jury:—You are sworn to
inquire into and assess damages of private
property from improvement, by the city, of
the Madisonville road, from McMillan street
to Woodburn avenue. The damages claimed
are for a fill in front of the premises of E. T.
Swift and for a cut in front of the premises
of B. F. Williams. The inquiry is made in
advance of doing the work, but is to be de-
termined upon the same principles as it would
be if the work were done.

"At the outset, you are to attend to the
question of the right of an abutting lot-owner
to recover for a cut or fill, in front of his

premises, made by the city in grading its streets. There can be no right to recover at all, except where a former grade having been already made, the property owner has conformed thereto, in making his improvements, and is injured in respect to his improvements by the change.

"A moment's reflection will enable you to see the reason of this. The city is owner of its streets for public usages of passage, just as much as the proprietor of the abutting lot is owner of his land. In improving the street for the convenience of passage, the city is upon its own property, and, as a general rule, the abutting owner can not complain of a cut or fill, any more than one neighboring owner can complain of another for cutting or filling upon his own land. The exception is where the city has fixed a grade and the owner has improved his property in conformity, for there, being induced by acts of the city, which may be regarded as conclusive in respect to what would be required for the public use of the street, the owner, having made his improvements, will be entitled to recover for a change by the city to the injury of such improvements. In other words, the general rule is that the city is not liable. The exception is where there has been a former grade, and the property has been improved to that grade. In that event there will be a liability to the extent that the improvements were injured by the change.

"The inquiry must begin, therefore, with the question, whether before 1874, when the grade was adopted to which the proposed improvement is to be made, the existing grade of Madisonville road was established.

"Prior to 1873, that territory was not within the limits of the city. The road was under control of a turnpike company, but country owners have the same private rights in adjacent highways as city owners have in adjacent streets, and while it may not appear by any written resolution or order, that the grade of the road to the levels existing was fixed, yet if, by use by the public authorities having charge of the road ,it was made to appear that such levels had been permanently adopted, it would be an established grade within the instruction given you, and an adjacent proprietor, improving according to that grade, would be entitled to recover against the city for injury to his improvements by the change. In other words, the establishment of a grade does not necessarily require the passage of an ordinance or other legislative action, but it may be shown by the nature of the improvement on the surface of the highway,

under the direction or sanction of the proper authorities.

"Leaving the question to be determined by you whether, within these principles, the grade of Madisonville road had been fixed prior to the annexation of that territory to the city, and whether the parties had conformed their improvements to that grade, the question will be next, if you find for them on that issue, as to the amount of damages which they are entitled to recover for the change now proposed by the city. Unless you find there was a grade to which they conformed in making their improvements, the inquiry, of course, is at an end.

"Leaving, as has been said, the question to you, let us take up for a moment the question which, to repeat, will be considered by you only after you have determined the firts question.

"Damages being given only in respect to improvements made in conformity to a grade established by public authority, you will exclude from consideration any improvements made after the ordinance of 1874, which changed the grade. The ground upon which damages are given at all is that the property owner has been led by the action of the public authorities to take an existing grade as established, and so, without expecting change, been induced to make his improvements; but where a change is advertised by the passage of an ordinance, subsequent improvements made by him are at his own risk, in case, when the grade comes to be made, he is injured.

"Confining, then, your attention to improvements made prior to the ordinance of May, 1874, it may be necessary to say, in the beginning, that damages are to make good the loss sustained by an injury. But they can only be given in money, and will be measured, therefore, only by differences of value in money. Money is the legal standard of values.

"Observing, then, that the right of an abutting owner to recover for change of grade is limited to injury to his improvements, there may be two classes of damages: First, where the nature of the work is such that necessarily part of his improvements will be destroyed. The determination of that class of damage is easy. For illustration, if this improvement is such that the hedge, which is on the line, and the gate and posts will be carried away, it will be easy to determine the loss. I mention these merely to illustrate.

"The other class is more difficult, but still the damages, if any, are to be ascertained. This, as has been said, upon the assumption that the first question left to you is deter-

mined in favor of the parties. The other class of damage to property by change of grade, consists not in carrying away the improvements, but in affecting their use. A house upon a man's property to which he could get no access from the street, might be valueless. To the extent, therefore, that the use of his buildings and improvements are affected by impairing the access between his property and the street, if he has a right to recover for change in the street, he is entitled to damages.

"How the extent to which improvements are affected by a change of this sort may be ascertained, is a question upon which there is no certain rule, but it must be left to your judgment, taking into consideration estimates and opinions of witnesses, but being in the end your own judgment. Opinions of witnesses in the way of estimates of damages are testimony, but only testimony, and it is the province of the jury to judge of the weight of of testimony.

"Because there is no certain rule by which matters of this sort may be determined, the evidence was permitted to take a wide range. You had testimony as to value of the entire property, and as to differences in value that would be occasioned by the contemplated change. You had testimony as to the value of the trees or ornamental shrubbery, and of the driveway. Estimates were also furnished as to the cost of what might be called a retaining wall, and of a slope. That was all competent, but is to be applied by you under instructions that the right to recover is limited to injury to improvements, and only as bearing upon that question, could testimony touching damages be received.

"Now, it may be natural to inquire how it can bear upon injury to improvements to hear what it will cost to take away a tree, or to dig down a slope, or to put up a wall. It is only this way, as may be explained, for the sake of example, by taking a case where the improvement a man has upon his property consists of a house, and there is change of grade, for which he is entitled to recover, by digging down in front of his house. The house left upon the top of the bank, inaccessible. would be valueless, except, perhaps, for the material of which it was composed, and which after the house was torn down, might be carried away. But the damages might not consist of the entire value of the house, because it might be possible so to arrange the approaches over the ground that the house would be accessible and could be used. In that event it would be as valuable as before, except for the depreciation caused by the

greater difficulty of access, and the damage would be measured by the difference between the value of the house when the approaches. were made to it, and the value as it stood before, adding to that the cost of making the approaches.

"Now the same general principle may be applied here. The recovery can only be had to the extent of the damage to the improvements; that is to say, to the extent that the improvements which were conformed to the grade as is was, will be depreciated by the change. If the approaches to the improvements, consisting of the residence and buildings, may be so arranged as to make them as accessible as before the difference would be in the cost of so making them accessible, together with what was necessarily lost in effecting that object; as, for instance, if trees or ornamental shrubbery, or fences, or driveway were required to be removed. This, though, gentlemen, you should observe, is only a mode of determining the true question. The true question is difference in value, caused by the change of grade, to the improvements made upon the property.

"One consideration, however, must certainly be excluded in computing the amount. The sightliness of a man's place, that is to say, the appearance it presents from the street in its front, is of value, certainly, but is not a right of property in the street. To come upon the place and deface its appearance would certainly be injury to a right of property, but to take away the street from the front, by lowering its grade, and so rendering a view of the premises impossible, would not be a property injury to the owner, any more than if his neighbor should obstruct the view. It is the same with respect to the view that the situation of property affords. The right of view of an owner is certainly valuable; it is one of the peculiar pleasures of property, but it is not property itself. There can be no property in a view. The property of the owner in a view extends only to the limits of his own. Beyond that, each owner has equal right. Any other doctrine would render every improvement or enjoyment, except by one man, of his property impossible.

"In making up your determination touching this question of damages, you are not to take into account as an offset against what might be otherwise recovered, general benefits that accrue from improvements in the vicinity, or from the fact that this street, by the very change contemplated, may be made more convenient for public passage. Benefits of that sort belong to the public, and the parties who-

are complaining are as constituent parts of the public, entitled to their equal share. The question is one of private property, and no private property can be taken, with an offset against the owners of the public benefits to which as citizens they are entitled.

"No question can arise, then, as to comparison of benefits, except if, in taking into consideration the damages sustained to the improvements, you go into the cost of making the improvements as accessible as before, it would be proper to take into consideration whether, when the access is so made there has been a value added, for if a value is added by the change of the slopes of the property, it should be taken into account. In other words, the amount properly to be awarded would be determined by comparing the expenses with any increase of value from the expenditures.

"One other consideration to which counsel have directed attention and upon which, therefore, it becomes necessary to charge: The right of a property owner to recover in respect to his improvements, where he has conformed them to an existing grade, extends to an injury to his drainage as well as an injury in any other respect. In other words, I decline to exclude from your consideration the question as to the effect upon the value of the building of Mrs. Swift, caused by the change of the grade in front of her property, in respect to drainage. It is not drainage of the lot, however, but drainage of the improvement; that is to say, of the building, since your inquiry, as I have attempted to explain throughout, is confined to the buildings."

Note, by Hon. F. M. Coppock, of the Cincinnati Bar.

(1.) *The right of recovery.* It has been laid down as a well-settled principle of law that a municipal corporation is not liable in an action for consequential injuries to private property, where the act complained of was done under the authority of a valid act of the legislature, and was done with reasonable care and skill. *Dillon Mun. Corps.* section 989. (3d ed.) Hence, "the courts, by numerous decisions in most of the states, have settled the doctrine that municipal corporations, acting under the authority conferred by the legislature to make, repair, or to grade, level, and improve streets, if they exercise reasonable care and skill in the performance of the work resolved upon, are not answerable to the adjoining owner whose lands are not actually taken, for consequential damages to his premises, unless there is a provision in the charter of the corporation, or in some statute, creating the liability. There is no

such liability, even though in grading and leveling the street a portion of the adjoining lot, in consequence of the removal of its natural support, falls into the highway. And the same principle applies, and the same freedom from implied liability exists, if the street be embanked or raised, so as to cut off or render difficult access to the adjacent property. And this is so, although the grade of the street has been before established, and the adjoining property owner had erected buildings or made improvements with reference to such grade." *Dillon Mun. Corps.*, section 990.

This is, no doubt, the general law. The reasoning by which it is arrived at and deduced from principle is, however, difficult in almost every case in which it has been discussed. In fact, there is such diversity of opinion as to the real ground upon which the rule of non-liability rests, that it may be said the cases agree only upon one point—that the municipal corporation is not liable.

The courts of the state of Ohio, in full view of the adjudications upon this question in other states, have come to a conclusion directly opposite to that of the current authorities, and, while admitting that it is contrary to the general rule, hold that there is a common law liability of a municipal corporation for injuries resulting to the abutting property owner, if he has improved his property with reference to the grade of a street, or road, or if an unreasonable grade is established to his injury, although the injury occurs in the exercise of lawful authority. The course of decision in Ohio is interesting, if for no other reason, because it stands alone.

The question first arose upon demurrer to a petition charging an *illegal and malicious* digging of the street and pavement to the injury of the plaintiff. Demurrer overruled— corporation liable for an illegal and malicious digging. *Goodloe* v. *Cincinnati,* 4 Ohio 500.

The same rule was made upon demurrer to a petition which charged an *illegal* digging—but not alleging that it was malicious. *Smith* v. *Cincinnati,* 4 Ohio, 514.

Where the officers acting in good faith under an order regularly made by town trustees for grading a street, dug up and removed earth in front of a person's house and lot, without doing any unnecessary damage, or any act except in good faith under the order, such officers were held not liable for injury sustained by the individual by such digging. *Scovil* v. *Geddings,* 7, Ohio pt., 2, 562.

These decisions of our supreme court contain nothing of importance in regard to the peculiar doctrine held in Ohio, inasmuch as

they are entirely in accord with the general current of authority, that an illegal or malicious digging up or grading of the street to the injury of the abutting owner is actionable, and that the agents of a corporation are not liable for the following out, in a proper manner, the direction of the corporate authorities.

The first instance of the broad doctrine of liability of municipal corporations for consequential injury, as formerly held in Ohio, occurs in a case where an action was brought for cutting ditches and water courses in such a manner as to cause water to overflow and wash away plaintiff's land. The court below charged that the act must be either illegal or malicious, in order to recover. This was held to be error. Upon this charge the court consider that the only question before them was: "Wheter a corporation was liable to repair damages for a consequential injury arising from the exercise of its ordinary powers." They hold that it is, and base their holding on the broad principle that, like an individual, it can only exercise its own rights in such a manner as not to injure the rights of others. Lane, C. J., in deciding the case, acknowledges that he goes beyond the decisions in other states, but declares that, in such cases, he does not look so much for precedents as to follow out incontestable principles. He, therefore, distinctly holds that corporations are liable like individuals for injuries done, although the act was not beyond their lawful powers. *Rhodes* v. *Cleveland,* 10 Ohio, 160

This decision is the starting point in the course of adjudication upon this subject in our state., and the fact that it wss not a case of simply digging down or filling up in front of the owner's premises, but involved a washing away, which approaches very nearly to taking. is of importance as probably explaining why the decision in the next case, which was based wholly on *Cleveland* v. *Rhodes,* took the direction which it did.

The action in the case mentioned was against the town council of Akron for cutting down a street, whereby the house and lot of plaintiff suffered injury. *McComb* v. *Akron,* 15 Ohio, 474. It is mentioned as a fact in the case, that "no previous grade had been established—no building with reference to any grade." The court below refused to give the following charge: "If plaintiff's property has sustained a real and substantial injury by reason of defendant's act in grading the street, that plaintiff might recover, even though the corporate authorities had acted strictly within their legal authority and without any intent to injure the plaintiff's prop-

erty." This refusal was held to be error. It will be observed that this charge, which should have been given, makes no reference to any previous grade, or improving with reference to any grade. Reed, J., says: "This sole question in the case is, whether a municipal corporation can be rendered liable for an injury resulting to property of another by an act of such corporation, strictly within the scope of its corporate authority, and unattended by any circumstance of negligence or malice." He, thereupon, basing his judgment of reversal upon the decision in *Rhodes* v. *Cleveland,* where the identical question was proposed by Justice Lane in deciding that case, holds that corporations, like individuals, are liable for acts done withn the scope of their lawful authority, and adds as an additional reason, that "If a municipal corporation for the good of all within its limits, sees proper to cut down a street, it is nothing more than right that an injury thereby done to a single individual should be shared by all."

This same case made a second appearance in the supreme court in a proceeding in error prosecuted by the town of Akron, when the former decision was affirmed. *Akron* v. *McComb,* 18 Ohio, 229. But one matter of signal importance appeared on the second hearing which was not involved in the first case, which we find in the judge's statement of the facts, viz.: That the plaintiff below "had made his improvement with an express view to the level and grade of Howard street, adjoining which the building stood." Although no note was taken of this fact in the decision which follows this statement, it has played an important part in all subsequent decisions and is, we believe, the one consideration which has made a complete change in the extent of the liability of corporations as established by previous decisions; for, when once you begin inquiring whether the owner has adjusted his improvements to a grade, looking to this as a ground of recovery, the question of previous improvements and grade becomes the controlling element in the case.

Hitherto we have heard nothing discussed by our supreme court as to the use of judgment and discretion in making improvements, or, in fact, of having any improvements as an element in the question of liability, but all the decisions have been upon the broad ground of an actual, substantial injury. But we now enter upon a new phase of the discussion which was introduced by the decision in the case of *Crawford* v. *Delaware,* 7 Ohio St., 459, and, from now on, we hear as much of "ordinary discretion and judgment," "reasonable

reference," "reasonable and proper grade" and the like, as we did of "actual and substantial injury" in the previous cases.

The case of *Crawfod v. Delaware* is the leading case in Ohio on this subject, and contains the only lucid statement of the law that we find, as modified after the decision in *McComb v. Akron*. This case discloses a statement of facts where an owner of a lot had improved it with reference to an old road, which was not within the corporate limits at the time of the improvement, but afterward brought into the city of Delaware and graded down several feet in front of plaintiff's premises. The charge to the jury below, upon which were predicated the proceedings in error in the supreme court, is quite long, but, inasmuch as it contains the substance of the law in our state today, with some slight modifications to be hereafter noted, we give the substance of it at length, separated into paragraphs for ease of comprehension.

1. That a municipal corporation, acting within the scope of its corporate powers, is not liable to the owners of lots in such corporation for injuries sustained by grading the streets, unless such grading be wrongful.

2. That where such corporation, in the exercise of its legal powers, makes a reasonable and proper grade of its streets, without doing any unnecessary injury to the unimproved property along the streets graded; and when such grading is not unreasonably, improperly or wantonly done, it is not wrongful.

3. But when such grading is unreasonably, improperly or wantonly made, it is wrongful, although the property be unimproved.

4. That where the owner builds and improves his lot with reference to the grade of a street, and such grade is afterwards changed so that the property is substantially injured, such grading would be wrongful, although the grade is a reasonable one.

5. That where the corporation has not fixed a grade, and none is established for a street, and the owner improves with reference to the then existing state of the road used in front of his lot, and uses ordinary discretion and judgment in making his improvements of the street and the right of the corporate authorities to make the same, and a grade is made to his injury, it is wrongful, although the grade may be reasonable.

6. But if under the circumstances of the last proposition, he makes his improvements without the exercise of such judgment and discretion, and without such reasonable reference to future reasonable and proper grade of the steet, and such reasonable and proper

grade is made to his injury, it is not wrongful.

This charge, as a whole, was considered "as favorable to the plaintiff as the principles of law would justify."

The court in concluding their opinion specifically affirmed the second, fourth and fifth propositions, assuming, as they did throughout the opinion, that the grade of an old established road was equivalent to a grade established by municipal authority, and, inasmuch as the third and sixth are simply the converse of the second and fifth, the whole may be taken as the law of this the leading case on the subject in our state. But to this should be added another proposition, which appears in the opinion of the higher court for the first time:

7. That if the owner of a lot on a street, the grade of which has not been established, that is, where no preparation of the surface of the ground for public travel has been made which would fairly indicate permanency, improves his lot, he must do so with ordinary care and discretion in anticipating a reasonable and proper grade, otherwise the establishment of such grade to his injury will not be wrongful.

The decision in *Youngstown v. Moore*, 30 Ohio St., 133, is an affirmance of the fifth proposition of the charge in *Crawford v. Delaware*. This case where a municipal corporation had adopted as a street a county road, which had been used without change of grade for more than thirty years, and where the owner of a lot abutting thereon had adapted his improvements to such road, which was afterwards graded by the authorities to his injury. Held, that in such case, if the owner had used ordinary discretion, care and judgment in making his improvements with reference to the road and with regard to future improvements of the street, he was entitled to a just compensation for his injury, although the grade which injured him was a proper one.

We have in the case of *Akron v. The Chamberlin Co.*, 34 Ohio St., 328, one circumstance which had not appeared before, viz: there was testimony tending to show that the building in question, a mill, had been built before any grade had been established; that a grade had afterward been established suitable to the conyenience of the mill; and that afterward this grade had been changed to another, in adjusting the street to which, the plaintiff had been injured  This decision is unfortunate in that it does not give the full charge upon which the proceedings in error are based. If we comprehend its full bearing,

the first part of the second section of the syllabus affirms the fourth and fifth propositions of the charge in *Crawford v. Delaware,* as above set forth. And the fourth and last section holds that the peculiar circumstances of the case fall within the principle mentioned in the first part of the second section, which would establish the principle that where one has improved a lot with reference to a reasonable future grade and his anticipations have been realized by the establishment of the grade for which he had prepared, any future change of this anticipated grade to the injury of the owner would be wrongful, and would entitle him to a recovery in the same manner as if he had originally built with reference to the grade first established. But the first section, and the second part of the second section of the syllabus, introduce a new principle, or, rather, qualify the seventh proposition as laid down in *Crawford v. Delaware.* The law as laid down in the seventh proposition in *Crawford v. Delaware* warranted the implication, that if an owner of an unimproved lot upon a street, the grade of which had not been established, used ordinary care and discretion in making his improvements with reference to a future grade, he would be entitled to recover, although the future grade by which he was injured was a reasonable one. That is, the implication here was that the reasonableness of the anticipated grade at the time the improvements were made, governed the right of recovery. But this is here declared not to be the law, and that the reasonableness or unreasonableness of the grade at the time it is established shall govern. In other words, the owner is bound to anticipate every reasonable grade, and his judgment and discretion at the time of building will avail him nothing, if before the grade is established circumstances have so changed as to make reasonable a lower or higher grade than the one he anticipated and with reference to which he built. In short, under such circumstances, he can not recover unless he can show that the grade as finally established is unreasonable at that time. The decision in *Akron v. Chamberlin Co.* can not be looked upon as any considerable contribution to the elucidation of this rather intricate subject. In fact, we believe its effect was rather the opposite. We gather more from the syllabus than from the opinion; but we believe it was the intention of the court to qualify the seventh proposition of the law as laid down in *Crawford v. Delaware,* at least so far as to justify the ruling made in *Cincinnati v. Penny,* 21 Ohio St., 499, which is based upon this question of the anticipation of the use to be made of an unimproved alley. Subject to this qualification of the seventh proposition, the law remains as it was left by the decision in *Crawford v. Delaware,* and may, we think, fairly be stated to be as follows:

A municipal corporation while acting within the scope of its legal authority and with care, *is not liable* for injuries to the owner of abutting property, occasioned by digging down or filling up a street to make it conform to an established grade. To which general rule there are the following exceptions:

1. It is liable to the owner of an unimproved lot, if the grade established is an unreasonable or improper one.

2. It is liable to the owner of an improved lot, if the owner has made his improvements with reference to the regularly established grade of a street, and the corporation changes such grade to his injury.

3. It is liable to the owner of an improved lot, if he has made his improvements with reference to the level or grade of a public way, fixed by the direction or under the sanction of the proper authorities, so as to fairly indicate permanency, if such grade or level be afterward changed to his injury. It is to be noted in the matter of grade as used in the decisions of our courts, that they do not contemplate as the only grade which is to be deemed established, one which has been specifically fixed by municipal or other legislative action according to an ordained grade line; but that the use of a road as a permanent passage way for the public is sufficient to justify the owner of abutting property in accommodating his improvements to it. Thus, the grade of an "old road," in *Crawford v. Delaware,* of a "country road," in *Youngstown v. Moore,* of a turnpike road made by a private corporation in *Cincinnati v. Williams,* was considered "established."

4. It is liable to the owner of an improved lot, if he has made his improvements with reference to a reasonable future grade before any grade has been established, first, if the corporation establish the grade which the owner anticipated and afterward change it to his injury, or second, if the corporation establish in the first instance an unreasonable grade.

In looking at the manner in which the Ohio courts have arrived at their present holding as above noted, we find that they have passed through two phases of opinion. In all cases previous to that of *Crawford v. Delaware,* we find that the general rule established is, that a corporation acting within its legal constituted power is liable for all substantial injury which

occurs to an individual by grading the street. And this, upon the broad ground that "justice and good morals" require that such should be the rule. But since the decision of *Crawford* v. *Delaware*, the question has not been simply whether there was an injury which justice and good morals required to be compensated, but whether the injury is one which the owner of the property could, with reasonable judgment, have anticipated. The rule of general liability has been changed to that of general non-liability. From being liable, like individuals, for all acts which cause an injury to another, although in the exercise of lawful powers, municipal corporations have become liable only for those acts which are unlawful, or done after some assurance has been given which would induce a prudent man to suppose that no such injury would occur. In short, the doctrine of liability, as now maintained, is one which depends upon circumstances which confine a recovery *practically*, (we say practically, for the reason that it is doubtful whether the courts have the power to declare that unreasonable which the municipal corporation has by its action considered reasonable. See *Dillon on Mun. Corps.*, section 991, note)—to a single case—the change of an established grade or its equivalent.

The ground of the liability as it now exists in Ohio is, as we understand it, this: The owner of a lot of land does not, strictly speaking, own the ground, but simply the use of it, to the exclusion of everybody else. His proprietorship consists of a bundle of rights which the law secures to him in order that he may apply the ground of the satisfaction of his wants—that he may enjoy it. All of these rights of user and enjoyment go to make up the value of the lot. If a lot is surrounded by the property of others, the ownership may be complete, but the facility of user is restricted—the right of access fails, and, hence, a part of the value of the lot. If it is situated on the public street, the value is increased, because the right of access is added to facilitate enjoyment. The right of abutting owners to the street "is a private right of the nature of an incorporeal hereditament, legally attached to their contiguous grounds, and the erections thereon,—an incidental title to certain facilities and franchises, assured to them by contracts and by law, and without which their property would be comparatively of little value." *Crawford* v. *Delaware*, 7 Ohio St., 469. Property in a piece of ground may be said, then, to consist in law, first, of the legal title thereto, which means the right to exclude others from the use of it, and second, the

right to the unobstructed use of it yourself. The former can not be taken away without compensation, under the provision of the constitution, but, if the latter is gone, the former is of no value. Hence, the latter being one of the elements which go to make up what we call property in land, it is within the spirit of the provision of the constitution, if not within the letter. The conclusion, therefore, is, that when this right of access from the street, which is one of the elements which go to make up the value of a lot, has been taken away or rendered less convenient, the owner has been injured in his property rights, "and no curt phrase like *damnum absque injuria*, can conceal the invasion or substantial injury."

The argument in the abstract is absolutely unanswerable. But there are other considerations. Should not something be sacrificed in order to aid the public in carrying out its works of improvement? Here is the real point of difference between the courts of Ohio and those of other states. In other states, the whole rights of the individual in this respect must yield to the public, while Ohio concedes something, but not all. If an individual has an unimproved lot on a street and is injured in his property rights by a change in it, he must stand the loss for the sake of public improvements; but if he has been induced by the public to suppose that their demands for beneficial improvements have been satisfied, and has expended money and labor in adjusting his premises to a state of things which he could reasonably suppose would be permanent, he will not be sent away, with the empty consolation of having made a sacrifice for public good, but will be given a just compensation for his loss.

(2.) *The measure of damages*—It is for injury to an improved lot only, that the owner is ordinarily entitled to recover damages under the decisions of the courts. But what is an improved lot? As to this our courts have left us in hopeless confusion. A lot may be improved by simply grading it down or filling it up, to make it correspond with the level of a street or road. It may also be improved by building houses, planting trees and shrubbery, etc. Such grading or filling may cost many times as much as building a house on a lot which does not need grading or filling. Suppose an owner has graded down his lot ten feet, to make it correspond to the established grade of a street, with the intention of building upon it, but before he has done so, the city establishes a new grade for the street, twenty feet higher than the previous one, and fills up the street to that height in front of his premises, would he be entitled to recover?

We believe that in all good conscience he should, and there is no authority against the position. But on the other hand we know of no positive authority which holds that he could.* Certainly all the conditions of a recovery have been fulfilled: He has improved his lot with reference to an established grade, and that grade has been changed to his injury. Our courts, in speaking of improvements, make use of the terms "permanent structures," "buildings," "erections," etc., and speak of an owner who "builds upon and improves," or who uses proper judgment in "making improvements or erecting buildings," as being entitled to recover. But they nowhere define what shall be considered an improved lot or what not. But, however it may be with a lot which is not built upon, if a building has been erected, a lot must, according to all authority, be considered improved, and whatever other additions are made for its convenient use and enjoyment, are looked upon as additional improvements.

But building upon and improving a lot in a large city is quite a different thing from building upon and improving a lot in the country. The improvements in the city would probably include simply a house with its necessary approaches—the building would constitute the improvement. While in the country they would include those additions which a person would ordinarily make to fit up a comfortable residence, such as buildings, fences, trees, roadways, outhouses, cisterns, etc. The improvement of a lot for business purposes, would probably include other and different items from the improvement of the same for purposes of residence, etc. It is however, with an "improved lot" that we have principally to deal, and, however various the improvements may be they all become of importance when we come to estimate the damage caused by a change of grade . And whatever these improvemtns are, whether buildings or other incidental arrangements of necessity, comfort, or convenience, they become, by being put upon the lot, a part of it; their value becomes a part of its value, and its value a part of theirs. No true valuation can be placed upon

the lot without taking them into consideration, and no injury can be estimated without reference to them.

Now as to damages. The grade or level of the street or road along the improved lot has been changed, has the owner been injured? A change has been made, but this does not necessarily cause ,legally, an injury to the owner. His feelings may be injured to see his property changed, but for this there is no balm in law. Is his lot reasonably worth as much as it was before. If it is, he has not been injured, if it is not, he has. The value of his lot before and after the change must, therefore, determine whether there has been an injury, and the difference in value must be the measure of his damages. The measure of damages then would be, the amount in money that the premises are worth less, immediately after the change is made, than they were immediately before. In *Buell* v. *Wooster,* 119 Mass, 372, the court say that the owner "was entitled to recover the diminution in value occasioned to his property in the condition it was when the change was made from a lower to a higher grade." In *Chase* v. *Worcester,* 108 Mass., 67, it is expressed thus: "The true nature of the damages is the amount of the depreciation in value taking into consideration all the circumstances of the condition in which it was left by the changes made in the street."

This statement of the measure of damages is simple enough, and would be a matter of easy computation if all witnesses would put the same estimate on the value of property; but, in practice, the real value which a jury finally determines upon must be made up from the most diverse opinions as to value, and the most different ideas as to the effect of a change. The task of a jury is one of exceeding difficulty, if conscientiously performed and one which it has been the policy of the courts to aid in the performance of, by allowing a wide range to testimony.

There are two lines of testimony which seem to have been permitted, in order to arrive at a just estimate of the change in value: First a general inquiry as to values, before and after the change of grade; and second, a special inquiry as to the cost of changes made necessary by the change of grade—both being simply to aid the jury in determining the amount of depreciation in value.

As to the first. A witness, who is competent, may testify directly as to what the value of the premises was immediately before and immedately after the change was made. "The court should have admitted the evidence offered to prove the value of the property before and

* NOTE. This question was settled several years after the writing of this article (1891), by the decision of the Hamilton Co., O., Circuit Court in *Seasongood* v. *Cincinnati,* 5 O., C. C., 225, holding that "If the owner of a vacant lot graded it down to conform to an established grade of the street, this is an improvement entitling him to recover if a higher grade is afterwards established for the street, thus forcing him to fill up again." Affirmed by Supreme Court without report, 7 W. L. B., 252. (Ed. W. L. B.)

after the improvement was made." *Elgin v. Eaton,* 83 Ill., 535. It was held in *Dalzell v. Davenport,* 12 Iowa, 437, that it was competent "for witnesses to state, in their examination in chief, the value of the plaintiff's property before and after the change of grade; but it is not competent for them, on such examination, to give their opinion as to the *effect* of such change in adding to or taking from such values." See also *Atlantic & Great Western R. R. Co. v. Campbell,* 4 Ohio St., 583, and *Cleveland & Pittsburg R. R. Co. v. Ball,* 5 Ohio St., 573. But he may not state whether the property has been damaged, nor the amount of damage which the owner has suffered. "Was the property of Mr. Church injured or benefited by the grading of 1870?" was held an improper question in *Church v. Milwaukee,* 31 Wis., 512. Also in appropriation proceedings, the question: "What, in your opinion, is the damage which Joseph Ball will sustain by reason of this appropriation?" *Cleveland & Pittsburg Railroad Co. v. Ball,* 5 Ohio St., 573.

The following answers were held inadmissible in *Dalzell v. Davenport,* 12 Ia., 437: "The effect of filling in the alley on Perry street, in my judgment, would increase the value of plaintiff's property very considerably." "I never thought the filling in the street and alley, was an injury to the value of plaintiff's property. I thought it was an improvement. I should think that the alteration of the grade would more than compensate for the expense of filling up the lot."

In making this estimate of values, no allowance should be made for general benefits which occur to all property along the street by reason of having a more commodious thoroughfare in front of them. These are benefits which the owner has a right to share with the rest, without having the amount of damages which he may be entitled to recover for injuries to him individually, and which are not shared by others, reduced by reason of them; and, furthermore, these benefits are paid for in the assessment for the improvement, in all those states where the costs of street improvements is assessed on the abutting owner. *Dillon on Mun. Corps.* section 625.

There is a question involved in this matter of comparative values which is of great importance to the subject under consideration. At the foundation of the claim for damages is a loss in value. A loss in value as to what? To the improvements, or the lot or to the whole? The district court of Hamilton county, through Judge Force, *Chatfield & Woods v. Cincinnati,* 1 W. L. B. 125, has said, that in case of injury, the jury is to be governed in the amount of damages by the "decrease in the value of the premises." This statement touches the kernel of the whole matter. It is not the injury to "buildings," or "permanent structures," or improvements" alone that is under consideration on the question of comparative values, but to the "premises." The question involved in an inquiry as to comparative values is, how much less would the premises sell for in the market after the change had been made. Not how much less the buildings would sell for or the "improvements" would sell for, but the lot with the improvements.

The buildings would be of no value, except for the materials of which they are composed, if the buildings were taken away. It follows that if the lot is improved, whatever injury occurs, occurs to the *premises*—the lot and improvements. Any other doctrine, we believe, would be subversive of those rights which it has been the effort of our courts to protect. We are cognizant of the fact that it was charged, and reiterated in the charge, in *Cincinnati v. Williams,* which precedes this discussion, that it was damage to improvements only which the jury were to consider. At the same time, the jury were told that they were to compare values. What values? Of the improvements? The improvements, with some trifling exceptions where there was an actual destruction by the work, looked at simply by themselves were as valuable after as before the change; and it was only by considering them as part and parcel of a beautiful suburban home that there could be any estimate made of the actual damage. No, it was the depreciation in value of the buildings and other improvements as part of the lot of ground on which they stood that was in question in that case. We believe, that any change which confines the attention of the jury to the injury to improvemtns alone, without reference to their being a part of the value of the ground on which they stand, is misleading, and, in some cases, would wholly defeat the rights which our law secures to the owner of a lot injured by a change in the grade of a street.

The practical effect of holding that the claim for damages shall be confined to the improvements, is most forcibly shown by supposing the case of a person whose property has been rendered valueless by the change in grade. Suppose a person had a lot on the grade of a street, worth $1,000 with a house on it worth $800, and the city fills up the street to meet a new grade, so high that a man of ordinary prudence would not take the premises and pay the taxes on them—in other words, renders them valueless. Would any reasonable man

claim that, under the decisions of our courts, such person would be entitled to recover only the value of his buildings, $800, while he has been actually damaged $1,800? The writer is cognizant of a case tried in the superior court of Cincinnati, but which is unfortunately not reported, where a man claimed, and was allowed to recover the value of his whole premises, under circumstances such as supposed; upon the testimony of competent witnesses, that they would not take the house and lot after the new street was made and pay the taxes on them.

There are, no doubt, cases where the injury is principally to the buildings or other improvements, as, for instance the case of *Akron* v. *Chamberlin,* where the lot lay low, and the building was built up to anticipate a higher grade, which was afterward established convenient to the building. This grade was afterward changed a few feet higher, so that access to the building was greatly damaged. Perhaps the taking of part of the building would have been less injurious to the owner than destroying the access to the whole. But on the other hand, as in the case *Cincinnati* v. *Williams,* the injury may be principally to the lot as improved, and the buldings may be injured only by the fact that they form part of the lot, and the whole is less valuable. The idea that the claim for damages must be confined to injuries to improvements, probably arises out of a misconception of the part which improvements play in this question. The improvements are a condition precedent to a claim for damages—there can be no damages in law, in Ohio, without improvements—but there can be an injury without improvements, and the only reason that there can be no damages is, because the courts have held that they will not hear the claim, unless the fact of there being improvements is first established. But when the fact of there being improvements is established, there is no authority for saying that the damages shall be confined to such improvements. On the contrary, we believe, the whole tenor of the decisions of our supreme court is in support of the view, that when the owner of a lot has made improvements, and has been injured by a change of grade, he will be entitled to recover just compensation for all the injury sustained. There is a well considered case in Iowa on this point, *Dalzell* v. *Davenport,* 12 Ia., 437. This case involved the construction of the statute of the state declaring that when a grade has been established, and improvements have been made with reference to it, and the grade is altered "in such a manner as to injure or diminish the value" of

[COPYRIGHT, 1901, BY CARL G. JAHN.]

the property improved, the "city shall pay to the owner or owners of said property so injured the amount of such damage or injury." The court below instructed the jury, that under this statute they could only consider the injury to improvements, viewed separately from the damages done to the lot. This was held to be error. The court, Wright, J., say: "If the owner had done no act upon the faith of the continuance of the grade as established, there would seem to be no great impropriety in denying him any possible damages consequent upon the change. When, however, he builds or makes improvements according to the grade, having acted, as he had a right to do, upon the supposition that the grade would remain unchanged, his property is brought within the meaning and terms of the statute. And property as herein used, includes the lot, real estate, the tenements, hereditaments, and all rights thereto, and interests therein." The court further say: "There is no reason in the nature of things, to thus confine the assessment of damages. When the improvements are made, they become part of the realty. Much difficulty would necessarily result in every case almost, in separating the damages to the lot as such, from those to the improvements, made thereon. If damages are to be confined to the improvements, then the inquiry arises, what are improvements within the meaning of the act? * * * When damages, however, are treated as relating to the entire property, lot as well as improvements, all difficulty is removed, and the law is easily administered."

But the question as to injury to particular improvements is of importance, not as indicating that damages to these alone is to be considered, but in aiding the jury in arriving at an estimate of the amount of damages to be allowed, this being a convenient means of coming at the damages to the premises. The premises have been damaged, but how? By injuring this part, or that part, or the other part; and these parts contributing to make up the value of the whole, the jury may by this means more readily arrive at their final determination—the difference in the value of the whole before, and the whole after the change has been made. And this leads us to the other mode of inquiry to aid the jury in their estimate of the decrease in value.

Second, an inquiry as to the cost of changes made necessary by the change of grade.

This inquiry involves what would be the expense which a prudent man would incur in putting the injured premises in as good a condition with reference to the new grade as they

were in with reference to the old; and assumes also that it would cost less than the whole premises are worth. The cost of restoring has, in some cases, been suggested as a possible measure of damages. *Stowell* v. *Milwaukee*, 31 Wis., 512. But, as a general rule, it is obviously wrong, for in some cases it would be too broad, as when it would cost more to restore the premises than they would have sold for in the before the change was made. In other cases, it would be too narrow, as if when the premises are restored as much as possible, they are still less valuable than before the change. The only case in which it would be a just measure would be, where the premises after the restoration are of the same value as before the change was made. In such case a recovery of the amount be, and what would be a proper and economical means of restoring it. And upon such testimony, being given, the cost of all those improvements which are destroyed by the change may be shown, and, further, the cost of any changes in the lot or improvements which is necessary or proper to make, to restore the premises, as nearly as possible, to their original value. Thus, when such work appears to be an economical and proper mode of restoring the premises, the cost of grading down, or filling up the lot, and lowering or raising the house thereon, in order to make it accessible, habitable and fit for use, may be shown. *McCarty* v. *St. Paul*, 22 Minn., 527; *Church* v. *Milwaukee*, 31 Wis., 512. In the latter case the court says: "If a change in the premises becomes necessary—a raising or lowering of the building and walks—whatever expense was incurred in adjusting the premises to the same relative position to the street after the change of grade as before, was to be allowed." Under like circumstances, held that a witness who had examined and made estimates might state "how much it would cost to cut down the petitioner's lots.

But it is not the cost of such changes as the owner may think desirable to make, or such as would be unreasonable for the purpose in view, that can be considered; but such as a prudent man would make, as the most economical and proper means of restoring the premises. Hence the cost of moving a house which stood 5½ feet from the street, and which it was not necessary to move, was held not to be within the rule. *Chase* v. *Worcester*, 108 Mass., 67.

Upon proof being offered that the construction of a retaining wall would be necessary to protect the lot on the side against encroachments from the soil and buildings on adjoining lots, the cost of such wall may be shown. *McCarty* v. *St. Paul*, 22 Minn., 527.

Also, the cost of a protecting wall along the street. *Bemis* v. *Springfield*, 122 Mass., 110. In this case the question as to "How much it would cost to erect a protecting wall on the Bemis property on Lyman street," was held competent.

We think it may be stated as a general rule upon which all authorities agree, that the value of everything which is either destroyed or injured, and the cost of all changes and additions which it is necessary to make or construct, as the proper, necessary and most economical means of restoring the injured premises, may be shown in this inquiry, in order to aid the jury in their final estimate. This would include houses and other buildings, trees and shrubbery, fences gates, roadways, cisterns, drains, etc. But the cost of these items does not in itself form a measure of damages, but is only a means of aiding the jury in estimating the difference in value. And, hence, if it should be found that after the premises are restored as much as may be, they are still of less value than before the change, this depreciation must be added to the cost of restoration.

But how if a value is added? In the inquiry as to general values, only the question as to general benefits can be raised, but here, in allowing for costs of specific items in restoring the premises, if it should appear that by reason of making the restoration, a value has been added, as, for instance, where the grounds were low and flat before the change, and by means of grading to accomodate them to a new grade of the street they have been given a gentle slope which insures them a good drainage, so that they would sell for more in the market than before the change, should an allowance be made for this local, peculiar benefit, which the owner has derived, which is not shared by others along the street? Our supreme court has not decided this specific question, but they have recognized the doctrine of general and special benefits, and, it seems, have evaded a decision upon the allowance of the latter in appropriation proceedings. *Cleveland & Pittsburg R. R. Co.* v. *Ball*, 5 Ohio St., 573; *Little Miami R.R . Co.* v. *Collett*, 6 Ohio St., 182. For discussion of general subject see *Dillon on Municipal Corporations*, section 625. But in *Cincinnati* v. *Wiliams* (*ante*), the jury were instructed to make an allowance for such benefits, if any, by deducting the amount from the costs of restoration. This was certainly correct. The very nature of the inquiry requires it. The jury are trying to estimate the depreciation in value, and, to aid them in this, testimony is allowed to show what it would

cost to restore the loss as nearly as possible. If in this restoration a value is added, certainly this must be deducted from the costs of restoration, in order to estimate the loss by reason of the change. Any other doctrine would lead to the anomoly of allowing the owner to recover damages for that which is a benefit to him.

The result of this second mode of inquiry may be stated to be:

1. If after the changes which a prudent man would make to restore the premises to as good condition with respect to the new grade as they were in with reference to the old, they are of the same value as before the change of grade, the rasonable costs of such restoration would be what the owner is entitled to recover.

2. If under like circumstances, they are less valuable when restored, than before the change of grade, the amount of this diminution in value should be added to the costs of restoration, as the amount of recovery.

3. If under like circumstances, they are more valuable when restored than they were before the change of grade, there should be a recovery for the difference between the costs of restoration and this increase of value if less than the costs of restoration, but no recovery if more.