15371

STATE HIGHWAY DEPARTMENT v. AMICK'S ESTATE

(18 S. E. (2d), 663)

October, 1940.

*Messrs. Wyche, Burgess & Wofford,* of Greenville, for appellants,

*Mr. John M. Daniel,* Attorney General, *Messrs. M. J. Hough* and *T. C. Callison,* Assistant Attorneys General, and *Messrs. Bolt & Wilkins,* of Greenville, for respondent,

February 10, 1942.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

The South Carolina State Highway Department served against the estate of Mrs. Pearl W. Amick, George W. Amick, John H. Amick, and William J. Amick, on or about the 22nd day of January, 1940, a notice that the State Highway Department required a right-of-way for a public highway through certain lands of the appellants situate in Greenville County, South Carolina, describing the land, and giving notice that a public hearing would be held at 9:30 o'clock a. m., on the 8th day of February, 1940, at the Court house in Greenville, South Carolina, to ascertain the amount of damages for taking the land for the proposed highway improvement.

The hearing was duly held, and the board of condemnation awarded the landowners the sum of $500.00. The landowners were not satisfied with the said award, and appealed to the Court of Common Pleas for Greenville County.

The action came on to be heard, *de novo,* before the Honorable G. B. Greene, presiding Judge, and a jury, and resulted in a verdict of $540.00 in favor of the present appellants. From that verdict, and the judgment thereon, the defendants in the condemnation proceedings who were appellants in that case and appellants here, appeal to this Court. The record shows that their appeal is based upon six exceptions, of which their counsel in their brief say:

"The six exceptions filed by appellants make but two issues for consideration of the Court, which will be discussed in order.

"I. Error in refusing to allow appellants to offer in evidence testimony showing damages to the remaining portion of the tract caused by the removal and rearrangement of the buildings thereon which was done by the Highway Department under the Resolution of the Board of Condemnation, and in instructing the jury to disregard any evidence of damages to the property owners caused by the removal of the dwelling house from one place to another." (Exceptions 1-5.)

"II. Error in striking from the Transcript of Record the Resolution of the Board of Condemnation." (Exception 6.)

At the beginning of the trial *de novo* in the Court of Common Pleas, Judge Greene stated to the jury:

"Mr. Foreman and gentlemen of the jury, the case that we are about to try now is a little out of the ordinary. Usually cases are brought in this Court when the plaintiff serves a complaint on the defendant, the defendant answers that complaint and sets up his defense, and the complaint and the answer make up the issues that we are to try here in this Court; but this proceeding, as I have already stated, is somewhat unusual and it is necessary for me, there being no pleadings in this case, to explain to you just what we are trying to do here, just what our duties are. The South Carolina State Highway Department, for the purpose of the location or re-location of a State highway, saw fit to condemn certain lands of these persons, George W. Amick, John H. Amick and William J. Amick. I will state in that connection, gentlemen, that that is the law of this State, that when the Highway Department sees the necessity of locating or relocating a State highway it is necessary for the State Highway Department, if it cannot agree with the owners of the land to be taken for that purpose to institute what we call condemnation proceedings. That was done in this case. The Board of Condemnation heard the matter at issue. That is the question of what compensation, if any, these persons were entitled to by reason of the taking of their land, and made an award. That is the Board of Condemnation stated what these persons would be entitled to for the taking of their land. Now under the law the land owner, if he is not satisfied with the award made by the Board of Condemnation can appeal to this Court and a jury is empanelled to hear all of the evidence and to say what, if anything, the land owner is entitled to by way of compensation for the taking of this land. So, the trial before the jury on an appeal, gentlemen, is what we call a trial *de novo*. That means the whole thing is tried over without any regard to what

the Board of Condemnation did. That is a jury is not bound by what the Board of Condemnation did, but it is the duty of the jury so empanelled to hear the evidence and hear the charge to the jury and find its own verdict.

"Now, gentlemen, in doing that I will state to you the rule by which we are to be governed in ascertaining what, if any, compensation a land owner is entitled to in cases of this kind; and here is the rule, I am reading from the statute law of this state:

" 'In assessing compensation and damages for rights-of-way only the actual value of the land to be taken therefor and any special damages resulting therefrom shall be considered.'

"First, the jury will take into consideration the actual value of the land taken for the right-of-way and they are to add to that any special damages resulting to the land owner by reason of the taking of that land for the purpose for which it was taken. Now, that will be the estimate of damages, gentlemen, to the land owner. Now, having determined what that is then the statute goes on and says:

" 'And due allowance shall be made for any special benefit which may accrue to the owner, including the value of the old road, if the same revert to such owner.' "

In the course of the trial, the jury was sent to view the premises, and the presiding Judge said to them the following, which is embraced in the exceptions of the appellants:

"All right, gentlemen, we are going to send you out to view the premises as we say here in Court. Now, before you go down I want you to listen to this ruling that I am about to make on some objection that was made to the introduction of testimony. Now, you pay careful attention to this, because in viewing the premises I want you to have that in mind, of course. Testimony was brought out here as to moving a house. That is, as I understand it, a dwelling house, which all parties agreed was not on the highway; I mean on the right-of-way that was condemned. Now, counsel for

the State Highway Department objected to that testimony because it was not proper to consider any damage that might have resulted to land owners by reason of moving the house from one place to another; and he also stated, I believe, that the State Highway Department would not expect any benefits by reason of that moving; so, gentlemen, in viewing the premises with regard to the damage done to the land owner, that is taking into consideration the land that was actually taken for the highway and special damages done to the remainder of the property; you will not consider as damages to the owner any damage that he may have sustained by reason of moving that dwelling house from one place to another, because that dwelling house was not on the right-of-way and if any damage was done it is not a proper element of damage here; that is in the moving of the house from one place to another. Not only that gentlemen, you cannot consider any special benefits that might have occurred to the owner by reason of moving the house from one place to another. That is neither the damage to him nor the benefits to him, if any damage or if any benefits could not be considered by you; I am instructing you that now. You are to consider only special damages that accrue to the remainder of his land by reason of the taking of that right-of-way and special benefits that may have accrued to him, if any, by reason of the taking of that right-of-way. I will instruct you more fully as to those damages that are recoverable in a case like this and the special benefits that are to be allowed in a case like this, but I wanted at this time before you view the premises to clear up your minds as to that one point about moving the house; you are not to consider that one way or the other. Now, you gentlemen understand it?"

The following is the exact language of the pertinent part of Subsection 2 of Section 5813 of the Code of 1932: "In assessing compensation and damages for rights-of-way, only the actual value of the land to be taken therefor, and any special damages resulting therefrom shall be considered, and due allowance shall be made for any special benefit which

may accrue to the owner, including the value of the old road, if the same revert to such owner."

When the appellants offered testimony relative to the moving of the house as an element of damages to which they were entitled, the testimony was excluded because in the opinion of the Circuit Judge, it was not such damage as was covered by the provisions of the statute. It is undisputed that the dwelling house was not situated on the part of the land taken for the highway. How, then, does it become a relevant issue because of its being moved by the highway department?

We quote from the record the following portion of the direct examination of L. B. Aull, a witness for the highway department:

"Q. Was it necessary to move the dwelling? A. No, sir.

"Q. And why did you move it; I will ask you this, did you have any conversation with Mr. Amick here in reference to moving it before it was done? A. He said in talking with him about the right-of-way it would have to be moved, he would not have room for his business in that corner.

"Q. All right, then, state whether or not you moved the building at his request and for his convenience there in reference to his business? A. Yes, sir.

"Q. That is why you moved it? A. Moved it for his convenience, yes, sir.

"Q. It in no way at all interfered with your right-of-way or construction of your highway? * * * State whether or not the dwelling house interfered in any way with the construction of the highway? A. No, sir."

Upon cross examination, this witness testified:

"Q. Why was the Amick dwelling house moved? A. Because Mr. Amick wanted it moved, I guess.

"Q. You guess? A. We would not have moved one that was not in the right-of-way."

From the direct examination of T. R. McAbee, another witness for the respondent, we also quote:

"Q. * * * did you receive instructions to go and move the residence? A. Yes, sir.

"Q. All right, did you talk to Mr. Amick when you went there? A. Yes, sir.

"Q. And what did he tell you? A. He told me he didn't want it moved right then.

"Q. All right, what did he tell you to do? A. to see his lawyer.

"Q. To see his lawyer? A. Yes, sir.

"Q. Then what did you do? A. I went to see the district engineer.

"Q. That was Mr. Armstrong? A. Yes, sir.

"Q. And did Mr. Armstrong talk to Mr. Ashmore while you were there? A. Yes, sir.

"Q. Over the phone? A. Yes, sir.

"Q. And as a result of the conversation what did Mr. Armstrong instruct you to do? A. He told me to go back out there and move that.

"Q. And move that; all right, when you went back did Mr. Amick instruct you where to put it? A. Yes, sir, he told me where to put it."

We also quote from the testimony of George W. Amick, one of the appellants, who testified in the course of the re-direct examination ·

"Q. * * * will you tell us again what you told the man when he came to move the buildings? A. When he came to move the buildings, he came out and piled a lot of lumber down and said they were going to move the building and there was a lot of shrubbery next to the house, and they didn't do it because they wanted to get the shrubbery man to move it so they could start blocking up the house; and at that time I told them, for him to go and see you; I didn't give them any authority or anything to move the house; and they asked me if the house had to be moved where did I want it and I told them I wanted it on one end of the lot or the other, that the lot was not big enough to put it in the middle and leave a piece on each side of the remainder after the right-of-way came out.

*     *     *

"Q. Mr. Amick, did you tell Mr. McAbee where to put the building, or did he come and ask you where you wanted the building, the residence, if it was moved? A. They came and piled the stuff out and said they were going to move it; they didn't ask me.

"Q. And you told them what? A. He said in case it has got to be moved where do you want it put, and I told him I wanted it on one end of the lot, that I didn't want it on the middle of the lot, but I did not tell them to move it."

On re-cross examination this appellant further testified:

"Q. Now, you didn't tell them not to move that place, did you, that house? A. I told them I didn't have anything to do with it.

"Q. But you didn't object? A. I never did tell them to move it.

"Q. But you didn't tell them not to move it? A. No, why should I?"

On this same point, the respondent's witness, L. B. Aull, also testified on cross examination:

"A. Mr. Amick told me that it would have to be moved before that; that was before they came there to move it.

"Q. Before they came to move it A. Yes, sir; some time before that; it would have to be moved in order to make room for his garage and filling station.

"Q. That was way back when he was inquiring about how many trucks were going to be on the road and what kind of road it was going to be? A. It was about the time he came down to open his business out there. * .* * September.

"Q. September of 1939? A. Yes, sir."

This is positive, direct, and unambiguous, to the effect that Mr. George W. Amick himself was responsible for the highway department's moving the dwelling house. To this evidence Mr. Amick makes no specific denial. His testimony is evasive and unsatisfactory. There can be no question that it was not to the interest of the highway department to remove the dwelling house. It was not on the condemned prem-

ises. It is, therefore, a logical conclusion that the respondent moved the dwelling house at the request of Mr. Amick.

It is a rule of this Court that where only one reasonable inference can be drawn from the whole evidence, it is a question of law for the Court. Mr. Amick's own testimony shows that it was to his interest to have the house moved, as he desired to have a part of the premises thus uncovered by the removal of the house for his own purposes in relation to his garage and used car area. Inasmuch as he himself had asked for the removal of the house, he expected to benefit by it, not through anything that the highway department had done to injure him, but because the removal would benefit him in carrying out his plans. He was paid for the removal of the buildings on the premises covered by the condemnation proceedings. The cost of the removal of the house, and the digging of the well upon the premises upon which the house was removed cost the highway department $397.00.

There can be no question in our minds that the appellants are not entitled to charge the highway department with this cost, if the removal was at the request and for the benefit of the appellants. If the agents and servants of the highway department went upon the portion of the land not covered by the condemnation proceedings, without the authority of the landowners, they were trespassers, and whatever damage they did can be recovered by the appellants in an action at common law for damages for trespass.

We do not think there was any error on the part of the Circuit Judge in excluding testimony offered by the appellants to show damages caused by the removal of the dwelling house.

In the text of 20 C. J., 778, 779, we find the following passage: "In proceedings to condemn land or to recover compensation for land already taken or injured, no damages are included except such as necessarily arise from a lawful taking and a proper construction and operation of the improve-

ment. Anticipated or past negligence in the construction of the improvement is not therefore an element of damage, * * * So in such a proceeding there can be no recovery for an original wrongful entry nor for trespasses committed in constructing the improvement. The remedy of the landowner in such cases is a common law action for damages." 29 C. J. S., Eminent Domain, § 161. Citing the case of *In re Thompson, Commissioner,* 48 Hun, 618, 2 N. Y. S., 34, ·35, from which we quote: "The claim for damages for the construction by the contractors of a roadway over the appellant's property was properly disallowed. * *· * The construction of the road outside of the lands sought to be acquired, was a simple trespass, for which the appellant may recover in an action against the proper parties."

And in Mill on Eminent Domain, 2d Ed., 420, we find: "The damages which are assessed under condemnation proceedings are only those arising from the skillful and proper construction and lawful use of the public improvement."

And on page 423 of the same volume it is stated: "A house on the land taken is a part of the realty and cannot be considered except in connection therewith. An inquiry as to the cost of removing it is altogether foreign to the question of damage."

In the case of *Chase v. Worcester,* 108 Mass., 60, we find a state of facts similar to the· case at bar. Briefly stated, the facts are: The complainant's dwelling house stood 52½ feet from Corbett Street, and 39.7 feet from Main Street. The complainant testified over objection that he had made a contract with one Babcock to move the house from its former site to the rear of the lot, and Babcock moved the house and complainant paid him $1,400.00. Also introduced in evidence that this removal was made necessary by changing the grade in Corbett Street. There was further testimony as to other expenses that he had gone to. The Court, at page 67 of 108 Mass., said:

"The damages to the petitioner are not properly to be · measured by the cost of such improvements or changes as he

may think desirable to make to adapt his estate to the new condition of the streets. Expenditures, necessary to restore structures upon the premises to their former condition relatively, may be recoverable as a part of the incidental damages. But improvements, substantial changes, such as appear to have been made by this petitioner, are not of that character. The dwelling house which he removed was fifty-two and one-half feet from Corbett Street. However advantageous its removal might be, it was not rendered necessary by the alteration and grading of Corbett Street.

"Aside from the value of the land taken, the damages to the petitioner were the amount of depreciation in value of the remaining land, taking into consideration all the circumstances of the condition in which it was left by the changes made in the street, and its capabilities either for sale or valuable use in that condition, or for improvement in such mode as the owner might choose.

"The expenses of particular improvements, which the petitioner subsequently saw fit to adopt, were not properly to be taken as a part of his damages; and the evidence of the amounts so expended or required was improperly admitted."

The sixth exception, which embodies the second question to be determined here, charges error to the Circuit Judge in striking from the record the resolution of the board of condemnation. The only part of that resolution which the appellants desired to use is this: " * * *, and the Highway Department *to move and rearrange the buildings located on the premises.*" (Emphasis added.)

Their purpose in desiring to use it was to argue that the highway department obligated itself to remove and rearrange all the buildings on all the premises. This seems wholly unreasonable. The statute expressly restricted the highway department to the part of the premises which it was condemning for its use, and its obligation was to remove and rearrange the buildings on the premises thus condemned. This it has done, as shown by the evidence. It removed the build-

ings, except the barn which was taken down and for which Mr. Amick received and accepted compensation.

We do not think there is merit in the exceptions. They are overruled, and the judgment is affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES and MR. ACTING ASSOCIATE JUSTICE E. H. HENDERSON concur.